# EXHIBIT A

INDIANA COMMERCIAL COURT

| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE MARION SUPERIOR COURT |
| | ) SS: | |
| COUNTY OF MARION | ) | CAUSE NO. |

QUALITY LEASING CO., INC.,          )
                                                           )
            Plaintiff,                             )
                                                           )
    vs.                                                 )
                                                           )
FORDE TRUCKING INC., CALVERT    )
FORDE, and CITIZENS BANK,           )
NATIONAL ASSOCIATION,              )
                                                           )
            Defendants.                        )

## **COMPLAINT**

Plaintiff Quality Leasing Co., Inc. ("Quality"), by counsel, for its Complaint against

defendants Forde Trucking Inc. ("Forde Trucking"), Calvert Forde ("Mr. Forde"), and Citizens Bank,

National Association ("Citizens"), states as follows:

### **Parties and Venue**

1.        Quality is a corporation organized and existing under the laws of the State of Indiana,

with a principal office address of 9380 Bauer Drive East, Carmel, Indiana 46280.

2.        Forde is a corporation existing under the laws of the State of North Carolina, with a

principal office address listed with the North Carolina Secretary of State of 16405 Monocacy Blvd.,

Huntersville, North Carolina 28078.

3.        Mr. Forde is a resident of the State of North Carolina. On information and belief, he

resides at 16405 Monocacy Blvd., Huntersville, North Carolina 28078.

4.        Citizens is a national banking association that transacts business in Indiana by

making loans, holding mortgage liens on real property and security interests in personal property

located in Indiana. Citizens has filed lawsuits in Indiana courts to enforce its mortgage liens and

security interests.  Its principal office is located at 1 Citizens Plaza, Providence, Rhode Island 02903.

5.      Pursuant to the Lease and Guaranty (each defined hereafter), Forde Trucking and Mr. Forde each agreed to accept venue in, and be subject to the personal jurisdiction of, any Federal or State Court in the State of Indiana.

### Allegations Applicable to All Counts

6.      Quality and Forde Trucking entered into a Master Lease Agreement dated July 31, 2014 and a Supplement to Master Lease dated February 15, 2017 (collectively, the "Lease"). True and correct copies of the Master Lease Agreement and Supplement to Master Lease are attached as Exhibits 1 and 2, respectively, and incorporated herein.

7.      To secure the indebtedness owed to Quality pursuant to the Lease, Mr. Forde executed a Personal Guaranty on August 11, 2014 (the "Guaranty"), pursuant to which he unconditionally and absolutely guaranteed the prompt payment to Quality of all amounts owed pursuant to the Lease. A true and correct copy of the Lease is attached as Exhibit 3 and incorporated herein.

8.      Pursuant to the Lease, Quality leased to Forde Trucking, for a term of 60 months, the following equipment:

> 2004 Mack Granite VIN 1M2AG11C24M015589;
>
> 2004 Mack Granite VIN 1M2AG11C74M015586; and
>
> 2004 Mack Granite VIN 1M2AG11C54M013299

(collectively, the "Vehicles").

9.      At all times relevant hereto Quality owned the Vehicles, as evidenced by Certificates of Title listing Quality as the Owner and Star Financial Bank as first lienholder. True and correct copies of the Certificates of Title for the Vehicles are attached collectively as Exhibit 4 and incorporated herein.

2

10.     Pursuant to the Lease, Forde Trucking agreed to keep the Vehicles insured against the hazards of all risk of loss and the full replacement cost thereof and maintain comprehensive liability insurance, with Quality listed as an additional insured and loss payee, all as more particularly described in the Lease.

11.     Forde Trucking obtained an insurance policy on the Vehicles through Great Lakes Insurance SE ("Great Lakes") or its affiliates. Great Lakes is a public company registered under corporate law of the European Union.

12.     On or about April 1, 2017, the Vehicle with VIN ending 15589 (the "Loss Vehicle") was involved in an accident. A true and correct copy of the Sworn Statement in Proof of Loss (Truck) executed by Forde Trucking and submitted to Great Lakes (the "Proof of Loss") is attached as Exhibit 5 and incorporated herein.

13.     The Proof of Loss lists the amount of the "Total Insured Loss and Damage" as $50,392.75. The Proof of Loss further provides that Great Lakes was "requested, authorized and empowered to pay, at its option" to "Forde Trucking, Inc. AND Quality Leasing Co., Inc. AND Star Financial Bank the sum of $45,392.75."

14.     On February 13, 2019, Great Lakes, through Johnson Claim Service, Inc. (a claims administrator performing services for the insurer), issued a check payable to the order of "Forde Trucking, Inc. AND Quality Leasing Co., Inc. AND Star Financial Bank" in the sum of $45,392.75 (the "Check"). The Check represents the proceeds of the Loss Vehicle. The Check was drawn on deposit account maintain with Citizens. A true and correct copy of the Check is attached as Exhibit 6 and incorporated herein.

15.     Quality was entitled to the proceeds of the Check as owner of the Loss Vehicle.

16.     Pursuant to Indiana Code section 3.1-110(d), "[i]f an instrument is payable to two or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them."

17.     The Check, accordingly, could not be negotiated, discharged, or enforced without endorsements by Quality and Star Financial Bank.

18.     The back of the Check included the following stamped message: "PROPER ENDORSEMENT REQUIRED FOR ALL PAYEE(S)."

19.     Quality and Star Financial Bank never received the Check and did not endorse the Check. However, after receiving a copy of the Check, Quality learned that on February 28, 2019, Forde Trucking deposited the Check with an unknown depositary bank without the endorsements of Quality or Star Financial Bank.

20.     Despite the fact the Check was not endorsed by Quality and Star Financial Bank, Citizens made payment on the Check.

21.     Forde Trucking retained the proceeds of the Check and did not remit them to Quality.

22.     Forde Trucking is in default of the Lease due to, among other things, the failure to remit the proceeds of the Check to Quality and the failure to make all monthly payments when first due pursuant to the Lease. Quality has received no payments on the Lease since May 14, 2021.

23.     Due to the defaults, Quality notified Forde Trucking it had terminated the Lease and declared all amounts owed pursuant to the Lease immediately due and payable.

24.     Despite Quality's demand, Forde Trucking has failed and refused to make payment.

### Count I – Breach of Lease

25.     For Count I of its Complaint against Forde Trucking, Quality incorporates and restates the allegations contained in the preceding paragraphs 1 through 24, and further states as follows:

4

26.     Due to the defaults, the entire indebtedness owed pursuant to the Lease is currently due and owing and has not been paid.

27.     Due to the defaults, Forde Trucking is indebted to Quality pursuant to the Lease in the amount of $95,596.80, together with interest accruing at the rate of 12% per annum from and after May 21, 2021, plus additional charges in the amount of $9,560.00.

28.     Pursuant to the Lease, Quality is also entitled to recover its attorneys' fees, costs, and expenses incurred in collecting the amounts due.

29.     Quality has been required to retain attorneys to assert its claims, rights and remedies pursuant to the Lease.

30.     Quality has performed all conditions required of it pursuant to the Lease or has been excused therefrom as a result of the defaults.

**WHEREFORE**, Quality respectfully requests the Court enter judgment in Quality's favor against Forde Trucking on Count I of the Complaint in the sum of $95,596.80, together with interest accruing at the rate of 12% per annum from and after May 21, 2021, plus additional charges in the amount of $9,560.00, late fees, attorney's fees, expenses, and all additional amounts due or that become due pursuant to the Lease, and grant Quality all other just and proper relief.

<u>**Count II – Breach of Guaranty**</u>

31.     For Count II of its Complaint against Mr. Forde, Quality incorporates and restates the allegations contained in the preceding paragraphs 1 through 30, and further states as follows:

32.     In consideration of and reliance on the Guaranty, Quality entered into the Lease.

33.     Pursuant to the Guaranty, Mr. Forde absolutely, unconditionally, and irrevocably guaranteed payment of all amounts owed by Forde Trucking to Quality.

5

34.     The Guaranty provides for payment of all costs and expenses, including attorneys' fees, incurred in enforcing the Guaranty. As noted, Quality has been required to retain attorneys to assert its claims pursuant to the Guaranty.

**WHEREFORE**, Quality respectfully requests the Court enter judgment in Quality's favor against Mr. Forde on Count II of the Complaint, with said judgment to be joint and several with the judgment entered on Count I, and for all indebtedness owed pursuant to the Lease, and grant Quality all other just and proper relief.

<u>**Count III- Criminal Conversion and Theft**</u>

35.     For Count III of its Complaint against Forde Trucking, Quality incorporates and restates the allegations contained in the preceding paragraphs 1 through 34, and further states as follows:

36.     Forde Trucking knowingly and intentionally exerted unauthorized control over property of Quality by depositing the Check and failing to remit the proceeds to Quality, which constitutes criminal conversion in violation of Indiana Code section 35-43-4-3.

37.     Forde Trucking knowingly and intentionally exerted unauthorized control over property of Quality with the intent to deprive Quality of its value and/or use by depositing the Check and failing to remit the proceeds to Quality, which constitutes theft in violation of Indiana Code section 35-43-4-2.

38.     As a direct and proximate result of Forde Trucking's criminal conversion and theft, Quality has been directly and proximately harmed and suffered economic losses in the amount of at least $45,392.75.

39.     Due to Forde Trucking's criminal conversion and theft and the resultant harm and economic losses suffered by Quality, Quality is entitled to recover under the Indiana Crime Victim

Relief Statute, Indiana Code section 34-24-3 *et seq*., damages equal to three times the amount of its actual damages, reasonable attorney fees, interest, and the costs of this action.

**WHEREFORE**, Quality respectfully requests the Court enter judgment in Quality's favor against Forde Trucking on Count III of the Complaint in a sum not less than $181,571.00, together with reasonable attorney fees and expenses, interest, costs, and all other just and proper relief.

### Count IV – Replevin of Vehicles

40.    For Count IV of its Complaint against Forde Trucking, Quality incorporates and restates the allegations contained in the preceding paragraphs 1 through 39, and further states as follows:

41.    Quality is the owner of the Vehicles.

42.    The Lease provides that, upon an event of default, Forde Trucking shall deliver possession of the Vehicles to Quality in the same condition as when delivered, capable of performing all functions, ordinary wear and tear excepted.

43.    Under the unambiguous terms of the Lease, Quality is entitled to possession of the Vehicles.

44.    On information and belief, with the exception of the Loss Vehicle, Forde Trucking is in possession of the remaining Vehicles (the "Remaining Vehicles").

45.    The Remaining Vehicles have not been taken for a tax, assessment or fine, pursuant to a statute, or seized under an execution or attachment against the property of Quality.

**WHEREFORE,** Quality respectfully requests that the Court:

A.    Enter an order declaring that Quality's interest in the Remaining Vehicles is superior to that of Forde Trucking and that Quality is entitled to possession of the Remaining Vehicles;

B.    Upon motion of Quality, enter a prejudgment order of possession of the Remaining Vehicles in favor of Quality pursuant to Indiana Code sections 32-35-2-1 *et seq.*;

C.      Enter an order authorizing the sheriffs of any counties where the Remaining Vehicles are located, in accordance with Indiana Code section 32-35-2-30, to cause any building or enclosure to be broken open in a manner the officer reasonably believes will cause the least damage to the building or enclosure and take possession of the Remaining Vehicles in the event the Remaining Vehicles are (1) in such building or enclosure, and (2) not voluntarily delivered to Quality by Forde Trucking or any other defendant in possession of the Remaining Vehicles;

D.      Enter a final judgment for possession of the Remaining Vehicles in favor of Quality terminating all interests of Forde Trucking and any other defendant named herein in the Remaining Vehicles and directing Forde Trucking, or any other party in possession of the Remaining Vehicles, to immediately surrender possession of the Remaining Vehicles to Quality; and

E.      Enter an order awarding Quality all other just and proper relief.

### Count V – Conversion (Citizens)

46.     For Count V of its Complaint against Citizens, Quality incorporates the allegations contained in the preceding paragraphs 1 through 45, and further states as follows:

47.     The Check was paid by Citizens without the endorsement of Quality or Star Financial Bank.

48.     Pursuant to Indiana Code section 26-1-3.1-420, an instrument is converted if a bank makes payment with respect to an instrument for a person not entitled to enforce the instrument or receive payment.

49.     Because the Check was made payable to the order of "Forde Trucking, Inc. AND Quality Leasing Co., Inc. AND Star Financial Bank," Forde Trucking was not entitled to enforce the Check or receive payment without Quality and Star Financial Bank's endorsements.

8

50.     Accordingly, Citizens converted the Check in violation of Indiana Code section 26-1-3.1-420 by making payment on the Check without the endorsements of Quality and Star Financial Bank.

51.     The defense provided in Indiana Code section 26-1-3.1-420(c) is not available to Citizens because, in this instance, it was the "payor bank." A payor bank is a "bank that is the drawee of the draft. I.C. § 26-1-4-105(3). Citizens was the drawee of the draft. Any bank handling a check for collection, including the depositary bank, but excluding the payor bank, is referred to as a "collecting bank." I.C. § 26-1-4-105(5). The defense provided in Indiana Code section 26-1-3.1-420 is only available to collecting banks. I.C. § 26-1-3.1-420, cmt. 3.

52.     Quality is eligible to bring an action for conversion pursuant to Indiana Code section 26-1-3.1-420 because it is a payee who received delivery of the instrument through delivery to a co-payee, Forde Trucking.

53.     As a direct and proximate result of Citizen's conduct, Quality has been damaged in an amount not less than $45,392.75.

**WHEREFORE**, Quality respectfully requests the Court enter judgment in Quality's favor against Citizens on Count V of the Complaint in an amount not less than $45,392.75, and grant Quality all other just and proper relief.

Respectfully submitted,

RUBIN & LEVIN, P.C.
Attorneys for Plaintiff


By:	*/s/ Matthew T. Barr*
	Matthew T. Barr, Atty. No. 30518-07
	James E. Rossow Jr., Atty. No. 21063-29
	RUBIN & LEVIN, P.C.
	135 N. Pennsylvania St., Suite 1400
	Indianapolis, IN 46204
	(317) 634-0300
	Fax (317) 263-9410
	mbarr@rubin-levin.net
	jim@rubin-levin.net


\\Pa1\data\WP80\GENLIT\Quality Leasing-Forde Trucking-22106083\Drafts\Complaint Quality Leasing vs. Forde Trucking.docx

# Quality Leasing Co., Inc.

**MASTER LEASE AGREEMENT**

**LESSOR:** Quality Leasing Co., Inc., 7173 E. 87th Street, Indianapolis, IN 46256

**LESSEE:** FORDE TRUCKING INC.
9422 MELANIE THOMPSON DRIVE
CHARLOTTE, NC 28213

THIS MASTER LEASE AGREEMENT (hereinafter "Master Lease") is made in Indianapolis, Indiana, by and between Quality Leasing Co., Inc. (herein "Lessor") and the above named Lessee.

**1. Lease of Equipment.** The Lessor named above ("Lessor") hereby leases to the lessee named above ("Lessee"), and Lessee hereby leases from Lessor, the personal property, motor vehicle or item ("Equipment") described in any Schedule, Addendum or Supplement ("Supplement") signed by the parties and made a part hereof. Lessee confirms the Equipment is being leased and will be used solely for commercial or business purposes (and not for consumer, personal, family or household purposes). The Parties agree that the terms and conditions set forth in this Master Lease are incorporated into any and all Supplements. Each Supplement shall constitute a separate and assignable Lease ("Lease"). The Master Lease and all Supplements shall constitute the parties entire agreement("Agreement"). THIS LESSEE SELECTED THE EQUIPMENT FROM A THIRD-PARTY AND LESSOR ACQUIRED THE EQUIPMENT FOR THE PURPOSE OF THE LEASE.

**2. Lease Term.** The term of each Lease shall be the number of months stated in the Supplement(s) executed by the Parties (plus any partial month, if the commencement date is other than the first day of a month), commencing on the date stated in the Supplement(s) (the "Term"). Lessee authorizes Lessor to insert such commencement date, provided that such date shall not be earlier than the date of delivery to Lessee and acceptance of all or a substantial part of the Equipment.

**3. Lease Payments.** The total rent for the Term of each Lease is equal to the total amount of the agreed payments set forth on the Supplement(s) executed by the Parties. Lessee agrees to pay the total rent in monthly installments, in advance, each in the amount stated in the Supplement(s) (except, in the event the commencement date is other than the first day of a month, the first installment shall also include a pro-rata portion of such monthly installment amount), commencing on the date stated in the Supplement(s). If the actual cost of the Equipment is more or less than the Total Cost as shown in the Supplement(s), the amount of each installment of rent will be adjusted up or down to provide the same yield to Lessor as would have been obtained if the actual cost had been the same as the Total Cost. Adjustments of 10% or less may be made by written notice from Lessor to Lessee. Adjustments of more than 10% shall be made by execution of an amendment to the Supplement reflecting the change in Total Cost and basic rental payment. The Lessee and Lessor hereto intend that all "Advance Rentals/Payments" paid by the Lessee as required under the terms and conditions of the Lease be deemed to have been earned by Lessor immediately upon Lessor's receipt thereof and applied as of that date to satisfy Lessee's obligations to make such Lease payments. All such "Advance Rentals/Payments" shall be non-refundable to Lessee under all circumstances, including (without limitation) in the event the Lease does not commence or terminates after the commencement date, but prior to the end of the Term of the Lease. Payment of all rentals and other amounts payable hereunder shall be made to Lessor at its above stated address, or as it shall otherwise designate in writing.

**EACH LEASE IS IRREVOCABLE AND MAY NOT BE CANCELLED, TERMINATED OR REVOKED BY LESSEE DURING THE TERM OF THE LEASE FOR ANY REASON WHATSOEVER.**

**EACH LEASE INCLUDES ALL OF THE TERMS AND CONDITIONS ON THE ATTACHED PAGES AND THE TERMS AND CONDITIONS OF ANY SUPPLEMENT(S) EXECUTED BY THE PARTIES.**

| Lessor: | Quality Leasing Co., Inc. | Lessee: | FORDE TRUCKING INC. |
|---|---|---|---|
| BY: | KENDRA FISCHER        OFF MGR | BY: | CALVERT FORDE        MEMBER |
| DATE: | 7-31-14 | DATE: | |

**4. Disclaimer of Warranty for Equipment.** LESSEE REPRESENTS THAT IT HAS SELECTED THE EQUIPMENT PRIOR TO HAVING REQUESTED LESSOR TO PURCHASE THE SAME FOR LEASING TO LESSEE, AND LESSEE AGREES THAT LESSOR HAS NOT MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, DIRECTLY OR INDIRECTLY, EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER, INCLUDING (WITHOUT LIMITATION LESSOR'S TITLE TO OR THE SUITABILITY OF THE EQUIPMENT, ITS DURABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS MERCHANTABILITY, ITS CONDITION, ITS CAPACITY, ITS OPERATION, ITS PERFORMANCE, ITS DESIGN, ITS MATERIALS, ITS WORKMANSHIP AND/OR ITS QUALITY AND AS BETWEEN LESSEE AND LESSOR OR LESSOR'S ASSIGNEE, LESSEE LEASES THE EQUIPMENT "AS IS". LESSOR AND LESSOR'S ASSIGNEE SHALL NOT BE LIABLE TO LESSEE OR ANY THIRD PARTY FOR ANY LOSS DAMAGE, INJURY OR EXPENSE OF ANY KIND OR NATURE CAUSED DIRECTLY OR INDIRECTLY BY ANY OF THE EQUIPMENT OR THEIR USE OR MAINTENANCE THEREOF OR ANY DEFECT THEREIN, THE FAILURE OF OPERATION THEREOF, OR ANY REPAIR, SERVICE OR ADJUSTMENT THERETO, OR BY ANY DELAY OR FAILURE TO PROVIDE ANY THEREOF OR BY ANY INTERRUPTION OR SERVICE OR LOSS OF USE THEREOF OR FOR ANY LOSS OF BUSINESS OR DAMAGE WHATSOEVER AND HOWSOEVER CAUSED, INCLUDING (WITHOUT LIMITATION) ANY LOSS OF ANTICIPATORY PROFITS OR ANY OTHER

1 of 9                                                                                    INITIALS

**Exhibit 1     Page 1 of 9**

# QUALITY LEASING CO., INC.

INDIRECT, SPECIAL OR CONSEQUENTIAL DAMAGES, NOR SHALL LESSOR BE LIABLE FOR ANY DAMAGES WHICH MAY BE ASSESSED AGAINST LESSEE IN ANY ACTION FOR INFRINGEMENT OR ANY UNITED STATES PATENT, TRADEMARK OR COPYRIGHT. LESSOR MAKES NO WARRANTY AS TO THE TREATMENT OF THE LEASE FOR TAX OR ACCOUNTING PURPOSES, OR AS TO THE COMPLIANCE OF THE EQUIPMENT WITH APPLICABLE GOVERNMENT REGULATIONS OR REQUIREMENTS, WHICH SHALL BE THE SOLE RESPONSIBILITY OF THE SELLER AND/OR MANUFACTURER OF THE EQUIPMENT. NO REPRESENTATION OR WARRANTY AS TO THE EQUIPMENT OR ANY OTHER MATTER BY SELLER SHALL BE BINDING ON LESSOR NOR SHALL THE BREACH OF SUCH RELIEVE LESSEE OF, OR IN ANY WAY AFFECT, ANY OF LESSEE'S OBLIGATIONS TO LESSOR AS SET FORTH HEREIN. Lessee agrees to look solely to the manufacturer, the seller or the carrier of the Equipment (which are solely responsible for supplying Lessee with all literature and manuals respecting the Equipment) for any claim arising from any defect, breach of warranty, failure or delay in delivery, misdelivery or inability to use the Equipment for any reason whatsoever and Lessee's obligations to Lessor hereunder shall not in any manner be affected thereby, including (without limitations) Lessee's obligations to pay Lessor all rent and other amounts payable under this Lease.

5. **Acknowledgement of Lessee Selection.** Lessee acknowledges and agrees that Lessee has selected both: (1) the Equipment; and (2) the supplier from whom Lessor is to purchase the Equipment. Lessee acknowledges that Lessor has not participated in any way in Lessee's selection of the Equipment or of the supplier, and Lessor has not selected, manufactured or supplied the Equipment. LESSEE IS ADVISED THAT IT MAY HAVE RIGHTS UNDER THE CONTRACT EVIDENCING THE LESSOR'S PURCHASE OF THE EQUIPMENT FROM THE SUPPLIER CHOSEN BY LESSEE AND THAT LESSEE SHOULD CONTACT THE SUPPLIER OF THE EQUIPMENT FOR A DESCRIPTION OF ANY SUCH RIGHTS. Lessor agrees to order the Equipment from Seller but shall not be liable for specific performance or damages if, for any reason. Seller delays or fails to fill such order. Lessor has no obligation to install the Equipment. Lessee acknowledges that Lessor is not the manufacturer or a supplier or dealer of the Equipment and that Lessor has not recommended Seller to Lessee. Lessee hereby waives any claim against Lessor with respect to the Equipment, including but not limited to claims of negligence or strict liability in the design, construction or manufacture of the Equipment.

6. **Delivery and Acceptance.** Lessee shall accept the Equipment upon its delivery and authorizes Lessor to insert on the Lease, or any Addendum, the serial or identification numbers and any additional description of the items of Equipment so delivered. Lessee will accept delivery and execute a Certificate of Acceptance for the Equipment. If Lessee wrongfully refuses delivery of any item of Equipment for any reason whatsoever, then and in that event, Lessee agrees to pay the price invoiced to Lessor by Seller, or if such payment is not made, Lessee indemnifies and holds Lessor harmless from and against, and agrees to protect and (at Lessor's option) to defend Lessor at Lessee's sole expense against (with counsel acceptable to Lessor), any claim or liability and damage by Seller with reference to such item of Equipment. Upon such payment, the Lease shall terminate as to such item of Equipment only, and the rental hereunder shall be proportionately adjusted. Lessor shall not be responsible for the failure of the purchase order to contain any description, specification, term or condition with respect to any item Leased hereunder, or its delivery, assembly or installation, not set forth herein.

7. **Location.** Lessee shall keep the Equipment within the United States at the Equipment Location set forth in the Supplement(s) or, if none is specified, at Lessee's above-stated address within the United States, and Lessee shall not remove any of the Equipment therefrom without Lessor's prior written consent.

8. **Use, Operation and Repair.** Lessee shall use the Equipment in a careful manner and shall at all times, at its sole expense, keep the Equipment in good operating condition, repair and appearance and comply with all laws, ordinances, regulations or requirements of any governmental authority, official, board or department relating to its installation, possession, use or maintenance, including but not limited to all environmental or pollution control laws, regulations or requirements. Use of the Equipment/Vehicle shall not exceed the use or mileage limitations set forth in any Supplement(s). Unless Lessee first obtains Lessor's express written consent, Lessee shall not make any alterations, additions, or improvements to the Equipment which are not readily removable without causing damage to or reducing the value of the Equipment. All alterations, additions, or improvements not readily removable shall become property of the Lessor. Lessee agrees to cause the Equipment to be maintained by the Seller an entity authorized by the manufacturer of the Equipment pursuant to a standard preventive maintenance contract or by a comparable maintenance contract issued by a maintenance provider acceptable to Lessor. If the Equipment is a Vehicle, Lessee may use or permit the use of the Vehicle only for lawful business purposes, but in no event shall such Vehicle be used for the transportation for hire of passengers except with prior written consent of Lessor. Lessee shall comply and cause all persons operating Vehicles leased hereunder to comply (a) with all applicable requirements of law relating to the registration, licensing, insurance, use and operation of the Vehicle including operator's licensing requirements, and (b) with all conditions of the policies of insurance on the Vehicle.

9. **Ownership of Equipment; Special Power of Attorney.** The Equipment is, and shall at all times remain, the property of Lessor and Lessee shall have no right, title or interest therein or thereto except as expressly set forth herein. Upon Lessor's request, Lessee shall affix and keep in a prominent place on each item of Equipment such labels, plates and/or other markings indicating that the Equipment is owned by Lessor as Lessor shall specify. Lessor shall have the right during normal hours, upon reasonable prior notice to Lessee, to enter upon the premises where the Equipment is located in order to inspect, observe or remove the Equipment, or to otherwise protect Lessor's interest. No invoice of Seller to Lessee shall, at any time, be deemed to have passed title to any of the Equipment to Lessee. Lessee hereby irrevocably and unconditionally assigns to Lessor all of Lessee's rights (but not its obligations) under any invoice or purchase order relating to the Equipment. Lessee shall not change or remove any insignia, label, plate or lettering that is on the Equipment at the time of delivery thereof, or that is thereafter placed thereon, indicating Lessor's ownership thereof. Except as may otherwise be provided by any written purchase or renewal option in a Supplement duly executed by Lessor, Lessee shall have no right to purchase or otherwise acquire title to or ownership of any of the Equipment or to extend the term of this Lease.

INITIALS

Exhibit 1     Page 2 of 9

# Quality Leasing Co., Inc.

If the Equipment is a Vehicle, the Parties agree:

(a) The Vehicles leased hereunder are and shall at all times remain the property of Lessor and Lessee shall have no right, title or interest therein except as expressly set forth in the Lease.

(b) All Vehicles leased hereunder shall be owned by and titled in the United States or a territory or dependency thereof in the name of Lessor.

(c) All Vehicles leased hereunder shall be registered in the United States or a territory or dependency thereof in the name of Lessee where permitted by law, or otherwise in the name of the Lessor.

(d) Lessee shall provide Lessor all information necessary to perfect such titling and/or registration.

(e) Lessor and Lessee intend the Lease to be a lease and not a sale or conditional sale of the Vehicle.

(f) Lessee shall pay or cause to be paid all costs, expenses fees and charges incurred in connection with the titling and registering of the Vehicle.

From time to time, purely for administrative convenience, title to a Vehicle may be placed in the name of Lessee.  Any certificate of title issued with respect to the Vehicle shall show Lessor as first lienholder in order to protect Lessor's ownership interest in the Vehicle.  Since titling of the Vehicle is for the administrative convenience of the parties, Lessee shall not thereby acquire any ownership, equity or other interest in the Vehicle other than a leasehold interest subject to the terms and conditions hereof.  (b). Upon termination of the Lease or at any other time upon receipt of notice from Lessor, Lessee shall take such action as necessary to transfer title into Lessor's name or the name of Lessor's designee.  Lessee hereby appoints Lessor as Lessee's attorney-in-fact for the purpose of transferring title to the Vehicle.  This power of attorney is coupled with an interest, is irrevocable and may be used by Lessor to execute and file any document necessary to accomplish such transfer of title.  At Lessor's request, Lessee shall execute and deliver to Lessor such additional instruments as may be necessary or desirable to reflect or confirm that, though title to the Vehicle is registered in Lessee, all incidents of ownership of the Vehicle remain, subject to the terms hereof, in Lessor.  (c) Lessee hereby appoints Lessor Lessee's attorney-in-fact for the purpose of executing in the Lessee's name and filing any instrument or document, including UCC financing statements, pertaining to or evidencing, Lessor's interest in any part of or attachment to the Equipment or Vehicle, and for the purpose of paying, on Lessee's behalf, any fee, tax or other expense arising out of such a filing and out of a records search in connection with the same.  Lessee shall reimburse Lessor for any such payment.  Lessee, accordingly, grants Lessor a security interest in the Vehicle or Equipment to secure the obligation under the Lease.  However, no filing under the UCC shall imply an intention to create a security interest, it being the intention of the parties that the Lease be construed as a lease and not a sale.

10. **Personal Property/Non-Fixture.** The Equipment shall be and remain personal property notwithstanding the manner in which it may be attached or affixed to realty.  Lessee represents, warrants and covenants that, unless Lessee owns the premises in which the Equipment is to be located and such premises are not subject to any mortgage or lease, Lessee shall provide Lessor, within ten (10) days following the execution by Lessee of the Lease, with a waiver from each landlord and/or mortgagee of the premises in which the Equipment is to be located of any rights which such landlord and/or mortgagee may have in respect of any of the Equipment (including, but not limited to, claims against the Equipment by reason of accession or distrait, or that the Equipment constitutes a fixture affixed to real property) and to procure for Lessor, in form acceptable to Lessor, such documents with respect to such waiver as Lessor may reasonably request.

11. **Waiver.** To the extent permitted by applicable law, Lessee hereby waives the benefit and advantage of covenants not to assert against Lessor, any valuation, inquisition, stay, appraisement, extension or redemption laws now existing or which may hereafter exist which, but for this provision, might be applicable to any sale or re-leasing made under the judgment, order or decree of any court or under the powers of sale and remedies conferred by the Lease or otherwise.  To the extent permitted by applicable law, Lessee hereby waives any and all rights and remedies conferred upon a Lessee by Article 2A-508 through 2A-522 of the Uniform Commercial Code, including but not limited to Lessee's rights to: (i) cancel the Lease; (ii) repudiate the Lease; (iii) reject the Equipment/Vehicle; (iv) revoke acceptance of the Equipment/Vehicle; (v) recover damages from Lessor for any breaches of warranty or for any other reasons; (vi) claim a security interest in the Equipment/Vehicle in Lessee's possession or control for any reason; (vii) deduct all or any part of any claimed damages resulting from Lessor's default, if any, under the Lease; (viii) accept partial delivery of the Equipment/Vehicle; (ix) "cover" by making any purchase or lease of or contract to purchase or lease Equipment/Vehicle in substitution of Equipment/Vehicle identified to the Lease; (x) recover any general, special, incidental, or consequential damages, for any reason whatsoever; and (xi) specific performance, replevin, detinue, sequestration, claim, delivery or the like for any Equipment/Vehicle identified to the Lease.  In addition, to the extent permitted by applicable law, Lessee also hereby waives any rights now or hereafter conferred by statute or otherwise which may require Lessor to sell, lease or otherwise use any Equipment in mitigation of Lessor's damages or which may otherwise limit or modify any of Lessor's rights or remedies.

No course of dealing between Lessor and Lessee or any delay or omission on the part of Lessor in exercising any rights hereunder shall operate as a waiver of any rights of Lessor.  A waiver on any one occasion shall not be construed as a bar to or waiver of any right or remedy on any future occasion.  No waiver or consent shall be binding upon Lessor unless it is in writing and signed by Lessor.

12. **Risk of Loss and Damage.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to the Equipment or any part thereof from any cause whatsoever during the term of the Lease and thereafter until redelivery to a location designated by Lessor, and shall not be relieved of the obligation to pay the total rent or any other obligation hereunder because of any such occurrence.  In the event of damage to any item of Equipment, Lessee, at its sole expense and at the option of Lessor, shall immediately place the same in

3 of 9                                                          INITIALS

Exhibit 1    Page 3 of 9

# QUALITY LEASING CO., INC.

good condition and repair. Lessee shall advise Lessor in writing within five (5) days of any Vehicle becoming lost, stolen or damaged and of the circumstances and extent of such damage. In the event any Vehicle shall become lost, stolen, destroyed, damaged beyond repair or rendered permanently unfit for use for any reason, or in the event of condemnation or seizure of any Vehicle, Lessee shall promptly pay Lessor, within ten (10) days after demand by Lessor, an amount equal to the Lessor's Loss as defined in paragraph 18 below. Upon payment of such amount to Lessor, such Vehicle shall become the property of Lessee, Lessor will transfer to Lessee, without recourse or warranty, all of Lessor's right, title and interest therein, the lease payments with respect to such Vehicle shall terminate, and the lease payments on the remaining Vehicles shall be reduced accordingly. Lessee shall pay any sales and use taxes due on such transfer. Any insurance or condemnation proceeds received shall be paid to Lessor and credited to Lessee's obligation under this paragraph.

13. Insurance. Lessee shall, at its expense, keep the Equipment fully insured in favor of Lessor against loss, fire, theft, damage or destruction from any cause whatsoever in an amount not less than the greater of (a) the total rent hereunder, plus Lessor's residual value as may be allocated to such Equipment, or (b) the full replacement cost of the Equipment without consideration for depreciation. Lessee shall also provide such additional insurance against injury, Loss or damage to persons or property arising out of the use or operation of the Equipment as is customarily maintained by the owners of like property, with companies satisfactory to Lessor. With respect to any Equipment that is a Vehicle, Lessee also shall at a minimum provide and maintain policies insuring the Vehicles for comprehensive coverage, fire, collision, loss, theft, destruction or damage of the Vehicle in an amount not less than the full replacement value thereof with a maximum $1,000 deductible, with loss payable to Lessor with minimum limits equal to acquisition or replacement costs whichever amount is greater and a maximum deductible of $1,000.00, and public liability insurance against claims for personal injuries, death and property damage, with minimum combined single limits of $1,000,000.00 and maximum deductible $1,000, which insurance shall name Lessor as an additional insured and as loss payee. Lessee shall pay the premiums for all insurance and deliver such policies, or duplicates thereof, to Lessor upon delivery of the Vehicles to Lessee.

Each policy shall provide that, as to the interest or coverage of Lessor or Lessor's assignee, the insurance afforded thereby shall not be suspended, forfeited, or in any manner prejudiced by any default or by any breach of warranty condition, covenant or neglect on the part of Lessee and that insurer will give Lessor at least thirty (30) days prior written notice before the policy is altered or cancelled. Lessor, at its option, may apply any proceeds of such insurance to replace or repair such Equipment and/or to Lessee's obligations hereunder. If Lessee shall fail to provide any such insurance or, within ten (10) days after Lessor's request therefore, shall fail to deliver the policies or certificates thereof to Lessor, then Lessor, at its option, shall have the right to procure such insurance and to add the full cost thereof to the rent payment next becoming due, which Lessee agrees to pay as additional rent. The amount of such insurance shall be sufficient so that neither Lessor nor Lessee will be considered a co-insurer. Lessee also shall carry public liability insurance, both personal injury and property damage covering the Equipment. All such insurance shall be in form, issued by such insurance companies and be in such amounts as shall be satisfactory to Lessor, and shall provide that losses, if any, shall be payable to Lessor as "loss payee", and all such liability insurance shall include Lessor as an "additional insured." Lessee shall pay the premiums for such insurance and deliver to Lessor satisfactory evidence of the insurance coverage required hereunder. Each insurer shall agree, by endorsement upon the policy or policies issued by it or by independent instrument furnished to Lessor, that it will give Lessor at least ten (10) days prior written notice of the effective date of any alternation or cancellation of such policy, and that Lessor's coverage under such policy shall not be affected by any default, misrepresentation or other breach by Lessor or Lessee under the Lease or such policy. Lessee shall provide Lessor with updated insurance information at least annually. Lessee hereby irrevocably appoints Lessor as Lessee's attorney-in-fact to make claim for, receive payments of and to execute and endorse all documents, checks or drafts received in payment for loss or damage under any such insurance policy. Lessor may apply the proceeds of said insurance to replace or repair the Vehicles and/or to satisfy some or all of Lessee's obligation hereunder. Lessor, at its expense, may choose to appoint a third party to act on its behalf to receive policies or notices and verify Lessee performs the insurance requirements set forth in the Lease. In any event, Lessee shall be liable for any loss, damage, expense or costs suffered or incurred by Lessor relating to or in any manner pertaining to the Lease, the Equipment or the use or operation of the Equipment.

14. Liens and Taxes. Lessee covenants and agrees at all times to keep the Equipment free and clear of all levies, liens and encumbrances, and to pay all charges, taxes and fees that may now or hereafter be imposed upon the ownership, leasing, rental, sale, purchase, maintenance, repair, possession or use of the Equipment (except taxes on or measured by Lessors income) and shall give Lessor immediate written notice of any of the foregoing and hereby indemnifies Lessor against any loss caused thereby. If any of same shall remain unpaid when due, Lessor may pay same and add such payment to the rent payment next becoming due, as additional rent. Lessee shall execute and deliver to Lessor upon Lessor's request such further instruments, financing statements and documents containing such other assurances as Lessor deems necessary or advisable for the confirmation or perfection of Lessor's rights hereunder or to otherwise effectuate the intents of the Lease. If Lessee fails to notify Lessor of a change in location which results in an amendment to a filing, application for refund, or other additional administrative work to correctly file, Lessee will pay Lessor an additional fee to compensate Lessor for this additional administrative burden. Lessor, at its expense, may choose to appoint a third party to act on its behalf to administratively manage, file and remit taxes as set forth in the Lease. Upon the expiration or earlier termination of the Lease, Lessee shall pay to Lessor any such taxes accrued or assessed, but not yet due and payable.

15. Indemnity. Lessee shall and does hereby indemnify and save Lessor, its officers, employees, agents, servants, successors and assigns, harmless from any and all liabilities (including, without limitation, negligence, tort and strict liability of Lessor, in whole or in part), damages, expenses, claims, actions, proceedings, judgments, settlements, losses, liens and obligations (each, an "Indemnified Claim"), including (without limitation) counsel fees and costs, arising out of the ordering, purchase, delivery, rejection, non-delivery, ownership, selection, possession, leasing, renting, financing, operation (regardless of where, how and by whom operated), control, use, condition (including but not limited to latent and other defects, whether or not discoverable by Lessee), maintenance, delivery, transportation, storage, repair, return or other disposition of the Equipment, any claims arising under federal, state or local environmental protection and hazardous substance clean up laws and regulations and any claims of patent, trademark or copyright infringement or, in the event that Lessee shall be in default hereunder, arising out of the condition of any item of Equipment sold or disposed of after use by Lessee, including (without limitation) claims for injury to or death of persons and for damage to property.

4 of 9

INITIALS _____

# QUALITY LEASING CO., INC.

The indemnities and obligations herein provided shall continue in full force and effect notwithstanding the expiration, termination or cancellation of the Lease for any reason whatsoever and irrespective of whether Lessor ever accepts the Lease. Lessee shall give Lessor prompt written notice of any Indemnified Claim and, at Lessor' sole option, shall defend Lessor against any Indemnified Claim at Lessee's sole expense with counsel selected by Lessor. Lessee is an independent contractor and nothing contained herein shall authorize Lessee or any other person to operate any item of Equipment so as to incur any liability or obligation for or on behalf of Lessor.

16. Assignment and Sublease. LESSEE SHALL NOT ASSIGN, PLEDGE, MORTGAGE OR OTHERWISE TRANSFER OR ENCUMBER ANY OF ITS RIGHTS UNDER THE LEASE OR IN THE EQUIPMENT OR ANY PART THEREOF, NOR SUBLET ANY PART THEREOF, NOR PERMIT ITS USE BY ANYONE OTHER THAN LESSEE AND ITS REGULAR EMPLOYEES, WITHOUT LESSOR'S PRIOR WRITTEN CONSENT. ANY SUCH PURPORTED TRANSFER, ASSIGNMENT OR OTHER ACTION WITHOUT LESSOR'S WRITTEN CONSENT SHALL BE VOID. Lessee shall not, without the prior written consent of Lessor, consolidate with or merge into or with any other entity, or sell, transfer, lease or otherwise dispose of all or substantially all of Lessee's assets to any person or entity.

Lessor may, without notice, transfer or assign the Lease or any interest herein and may mortgage, pledge, encumber or transfer any of its right or interest in and to the Lease and/or the Equipment or any part thereof and, without limitation, each assignee, transferee and mortgagee shall have the right to further transfer or assign its interest. Each such assignee, transferee, mortgagee and pledgee shall have all of the rights (but none of the obligations) of Lessor under the Lease, and Lessee hereby acknowledges notice of Lessor's intended assignment of Lessor's interest in the Lease and, upon such assignment, Lessee agrees not to assert against any of such transferee, assignee, mortgagee or pledgee any defense, claim, counterclaim or set-off that Lessee may have against Lessor, whether arising under the Lease transaction or otherwise. Any assignee of Lessor's rights under the Lease shall be considered a third party beneficiary of all of Lessee's representations, warranties and obligations hereunder to Lessor. Lessee agrees that after receipt by Lessee of written notice of an assignment from Lessor or from Lessor's assignee, all rent and other amounts which are then and thereafter due under the Lease shall be paid unconditionally to such assignee at the place of payment designated in such notice. Lessee acknowledges that any assignment of Lessor's interest would neither materially change the Lessee's obligations hereunder nor materially increase the burden or risk imposed on the Lessee under the Lease. Lessee further acknowledges that an assignment by the Lessor of its interest hereunder will be permitted even if the assignment would deem to materially affect the Lessee's interest.

17. Default. As used in the Lease, the term "Event of Default" shall mean any one or more of the following: (a) the failure by Lessee to make any payment when due hereunder or the failure by an Obligor (as hereinafter defined) to pay when due any of the Liabilities (as hereinafter defined); (b) the failure by an Obligor to observe or perform (i) any other agreement or obligation to be observed or performed hereunder or under any agreement, document or instrument delivered to Lessor by or on behalf of any Obligor or otherwise relating to any of the Liabilities (collectively, the "Other Documents"), or (ii) any other obligation of an Obligor to Lessor; (c) any representation or warranty made by or on behalf of any Obligor in the Lease or in any of the Other Documents shall at any time prove to have been incorrect or untrue when made; (d) the making by an Obligor of any misrepresentation to Lessor or the failure on the part of an Obligor to disclose to Lessor any material fact in connection with the Lease or otherwise, either contemporaneously herewith or at any time prior or subsequent to the execution hereof; (e) the breach by an Obligor of any warranty contained herein or in any of the Other Documents, including, without limitation, Lessee's failure to obtain or maintain any insurance required by Lessor hereunder; (f) a default in the payment of any indebtedness owed to any individual or entity other than Lessor, or a default in the performance or observance of the terms of any agreement, document or instrument pursuant to which such indebtedness was created, secured or guaranteed, the effect of which default is to cause or permit the holder of any such indebtedness to cause the same to be due prior to its stated maturity (whether or not such default is waived by the holder thereof); (g) the failure of an Obligor to pay, withhold, collect or remit when asserted or due any tax, assessment or other sum payable with respect to the Equipment or any security for any of the Liabilities (including, without limitation, any premium on any insurance policy with respect to any of the Equipment or any security for any of the Liabilities, or any insurance policy assigned to Lessor as security for any of the Liabilities), or the making of any tax assessment against any Obligor by the United States or any state or local government; (h) the entry of a judgment against an Obligor or any attachment, levy or execution against any property of an Obligor, or the condemnation or seizure of any part of any property of an Obligor by any governmental authority or court at the instance of such governmental authority; (i) the death of an Obligor, if an individual, or the death of any individual member of an Obligor, if a partnership or joint venture; (j) the change in control, management, ownership or operations of the Obligor, or the suspension of the usual business of an Obligor, or the dissolution, merger or consolidation liquidation or other termination of existence of an Obligor, or the adoption of any resolution for the dissolution, liquidation sale, transfer, lease, disposition of the assets of Lessee or other termination of existence of an Obligor, or the sale of material assets of an Obligor; (k) the failure of an Obligor (or any admission in writing by an Obligor of its inability) to generally pay its debts as they become due or the insolvency or business failure of an Obligor; (l) the filing of an application for appointment of trustee, custodian or receiver for an Obligor or of any part of an Obligor's property, or an assignment for the benefit of creditors by an Obligor, or the making or sending of notice of any intended bulk transfer by an Obligor; (m) the filing of a petition in bankruptcy by or against an Obligor, or the commencement by or against an Obligor of any proceeding under any bankruptcy or insolvency law or statute, or any law or statute, relating to the relief of debtors or arrangement of debt, readjustment of indebtedness, reorganization, receivership or composition, or the extension of indebtedness; or (n) such a change in the condition or affairs (financial or otherwise) of an Obligor as shall, in the sole opinion of Lessor increase Lessor's risk with respect to the Lease, the Equipment or any of the Liabilities or any security therefor.

For purposes of the Lease, the term "Obligor" shall mean Lessee and any guarantor, pledger or hypothecator, and any other party liable for any of the Liabilities of Lessee in addition to Lessee, and the term "Liabilities" shall mean all liabilities and obligations of any kind of all Obligors (or any partnership, joint venture or other group of which an Obligor is a member) to Lessor whether (i) for the account of Lessor, or as agent for others, (ii) acquired directly or indirectly by Lessor from Lessee or otherwise, (iii) absolute or contingent, joint or several, secured or unsecured, liquidated or un-liquidated, due or not due, contractual or tortuous or now existing or hereinafter arising, or (iv) incurred by an Obligor as principal, surety, endorser, guarantor or otherwise, and including without

INITIALS

Exhibit 1    Page 5 of 9

# $Q$UALITY LEASING CO., INC.

limitation all expenses and attorneys' fees, incurred by Lessor in connection with any such liabilities or obligations or any security therefor.

**18. Remedies.** Lessor and Lessee agree that Lessor's damages suffered by reason of an Event of Default are uncertain and not capable of exact measurement at the time the Lease is executed because the value of the Equipment at the expiration of the Lease is uncertain, and therefore they agree that for purposes of this paragraph 18 "Lessor's Loss" as of any date shall be the sum of the following: (1) the amount of all lease payments and other amounts payable by Lessee hereunder due but unpaid as of such date plus (2) the amount of all unpaid lease payments for the balance of the term of the Lease not yet due as of such date discounted from the respective dates installment payments would be due at the 3%, plus (3) any residual or any other amount set forth in any Supplement or Addendum.

Upon the occurrence of an Event of Default and at any time thereafter, Lessor may exercise any one or more of the remedies listed below as Lessor in its sole discretion may lawfully elect, provided, however, that upon the occurrence of an Event of Default specified in paragraph 17(m), an amount equal to Lessor's Loss as of the date of such occurrence shall automatically become and be immediately due and payable without notice or demand of any kind. The exercise of any one remedy shall not be deemed an election of such remedy or preclude the exercise of any other remedy, and such remedies may be exercised concurrently or separately but only to the extent necessary to permit Lessor to recover amounts for which Lessee is liable hereunder.

a) Lessor may, by written notice to Lessee, terminate the Lease as to any or all of the Equipment subject hereto and declare an amount equal to Lessor's Loss as of the date of such notice to be immediately due and payable, as liquidated damages and not as a penalty, and the same shall thereupon be and become immediately due and payable without further notice or demand, and all rights of Lessee to use the Equipment shall terminate but Lessee shall be and remain liable as provided in this paragraph 18. Lessee shall at its expense promptly deliver the Equipment to Lessor at a location or locations within the continental United States designated by Lessor. Lessor may also enter upon the premises where the Equipment is located and take immediate possession of and remove the same with or without instituting legal proceedings.

b) Lessor may proceed by appropriate court action to enforce performance by Lessee of the applicable covenants of the Lease or to recover, for breach of the Lease, Lessor's Loss as of the date Lessor's Loss is declared due and payable hereunder provided, however, that upon recovery of Lessor's Loss from Lessee in any such action without having to repossess and dispose of the Equipment, Lessor shall transfer the Equipment to Lessee at its then location upon payment of any additional amount due under clauses (d), (e) and (f) below.

c) In the event Lessor repossesses the Equipment, Lessor shall either retain the Equipment in full satisfaction of Lessee's obligation hereunder or sell or lease each item of Equipment in such manner and upon such terms as Lessor may in its sole discretion determine. The proceeds of any such sale or lease shall be applied to reimburse Lessor for Lessor's Loss and any additional amount due under clauses (d) (e) and (f) below. Lessor shall be entitled to any surplus and Lessee shall remain liable for any deficiency. For purposes of this subparagraph, the proceeds of any lease of all or any part of the Equipment by Lessor shall be the amount reasonably assigned by Lessor as the cost of such Equipment in determining the rent under such lease.

d) Lessor may recover interest on the unpaid balance of Lessor's Loss plus any amounts recoverable under clauses (e) and (f) of this paragraph 18 from the date it becomes payable until fully paid at the rate of the lesser of 12% per annum or the highest rate permitted by law.

e) In addition to any other recovery permitted hereunder or under applicable law, Lessor may recover from Lessee an amount that will fully compensate Lessor for any loss of or damage to Lessor's residual interest in the Equipment,

f) Lessor may exercise any other right or remedy available to it by law or by agreement, and may in any event recover legal fees and other costs and expenses incurred by reason of an Event of Default or the exercise of any remedy hereunder, including expenses of repossession, repair, storage, transportation, and disposition of the Equipment. Any payment received by Lessor may be applied to unpaid obligations as Lessor in its sole discretion determines.

If any Supplement is deemed at any time to be a lease intended as security, Lessee grants Lessor a security interest in the Equipment to secure its obligations under such Supplement, all other Supplements and all other indebtedness at any time owing by Lessee to Lessor, Lessee agrees that upon the occurrence of an Event of Default, in addition to all of the other rights and remedies available to Lessor hereunder, Lessor shall have all of the rights and remedies of a secured party under the Uniform Commercial Code.

No express or implied waiver by Lessor of any breach of Lessee's obligations hereunder shall constitute a waiver of any other breach of Lessee's obligations hereunder.

**19. Late Payment Charges.** Whenever any rental or other amount payable to Lessor by Lessee hereunder is not paid within fifteen (15) days of such payments due date, Lessee agrees to pay Lessor, on demand, as liquidated damages and not as a penalty, (a) with respect to rental payments, an administrative fee equal to five cents ($.05) for each one dollar ($1.00) of such delayed rental payment, or the maximum amount permitted under applicable law, whichever is less, and (b) with respect to rent payments overdue for more than thirty (30) days and all other amounts payable to Lessor by Lessee hereunder, a late charge calculated at the rate of 15% on such overdue amount, or the maximum amount permitted under applicable law, whichever is less, from the date such payment is due until the date such payment is made in full to Lessor. Such amount(s) shall be payable in addition to all amounts payable by Lessee as a result of exercise of any of the remedies herein provided. Lessee agrees to also reimburse Lessor for any expenses (including Lessor's attorneys' fees and costs) arising out of or caused by the Lessee's default.

6 of 9

INITIALS

Exhibit 1    Page 6 of 9

# QUALITY LEASING CO., INC.

**20. Entire Lease Irrevocable.** Lessee agrees that the Lease is irrevocable for the entire Term, that Lessee's obligations under the Lease are absolute and unconditional and shall continue without abatement and regardless of any disability of Lessee to use the Equipment or any part thereof because of any reason including, but not limited to war, act of God, governmental regulations, strike, loss, damage, destruction, obsolescence, failure of or delay in delivery, failure of the Equipment to operate properly, termination by operation of law or any other cause. Lessee warrants that the application, statements and credit or financial information submitted by it to Lessor are true and correct and made to induce Lessor to enter into the Lease and to order the Equipment from Seller. Lessee agrees to provide to Lessor other interim financial information as Lessor may request. Lessee warrants that the Lease has been duly authorized, executed and delivered by Lessee, and constitutes the legal, valid and binding obligation of Lessee, enforceable in accordance with its terms, and that no provision of the Lease is inconsistent with Lessee's charter, by-laws, or any loan or credit agreement or other instrument to which Lessee is a party or by which Lessee or its property may be bound or affected or conflict with any applicable law, rule or regulation, and no claim, action or suit is pending or has been threatened that would adversely affect Lessee's ability to enter into or perform its obligations under the Lease.  Lessee shall not change its name or its address without providing Lessor with at least thirty (30) days prior written notice thereof.

**21. Return of Equipment.** Lessee warrants covenants and agrees that upon expiration or termination of the Lease and any renewal hereof, with respect to any item of Equipment, Lessee shall, at its expense, return such Equipment in the same condition as received, reasonable wear and tear excepted by delivering same to Lessor or to a place designated by Lessor, unless Lessor shall elect in writing to abandon all or part of such Equipment. That Parties agree with respect to a Vehicle, that at the expiration of the Term hereof, Lessee will at its own expense return the Vehicle to Lessor in the same condition in which it was received by Lessee, ordinary wear and tear and natural depreciation excepted, at a place of Lessor's choosing.  As soon as practicable thereafter, Lessor will sell or relet the Vehicle.  If the net proceeds from the sale or reletting of the Vehicle exceed the Residual Value of the Vehicle and other charges then due pursuant to the Lease, Lessor will be entitled to keep such excess.  If not, and there is a deficiency, Lessee will immediately pay the deficiency to Lessor.  The Residual Value will be the purchase option for the Vehicle/Equipment. Net proceeds will be the proceeds of the sale or reletting after deduction of all expenses of the sale, a termination fee of $100.00 and the cost, if any, incurred by Lessor in repairing damage to or reconditioning the Vehicle.

**22. Surrender, Sale, Final Settlement.** Lessee further agrees that upon expiration of the Lease it shall pay promptly all costs, expenses and obligations of every kind and nature relating to the Equipment which may arise or become due during the Term of the Lease, whether or not specifically mentioned herein.  No rental or other sums payable by Lessee pursuant to the Lease shall be subject to set-off, deduction, counterclaim, abatement, recoupment, or reduction, nor shall the Lease terminate, nor shall Lessee be entitled to any credit against such rental or other sums for any reason whatsoever, including, but not in any way limited to, any damage to or destruction of the Equipment or any item thereof, any limitation, restriction, deprivation or prevention of, or any interference with Lessee's use of the Equipment or any item thereof, whether the sale shall be lawful or unlawful, any dispossession of Lessee from the Equipment or any item thereof by title paramount or otherwise, the requisition or taking by statute or by exercise of the power of eminent domain or other governmental authority or otherwise, or by injunction or by any private person, of the Equipment or any item thereof, the prohibition of Lessee's business in whole or in part, whether pursuant to law or otherwise or any reason whether similar or dissimilar to the foregoing.

Upon termination of the Lease with respect to any Vehicle, Lessee shall provide the information necessary to complete any disclosure statement required by applicable Federal or State laws and regulations, including odometer disclosure laws.  Upon prior written direction of Lessor, Lessee shall sell any Vehicle for Lessor and Lessee shall prepare and execute on behalf of Lessor any disclosure statement required by applicable Federal or State laws and regulations, including odometer disclosure laws and provide Lessor with a copy of each such disclosure statement.  Lessee will hold Lessor harmless from any and all liabilities whatsoever arising from Lessee's failure to provide accurate information for the preparation of any such disclosure statement or failure to accurately prepare and deliver any such disclosure statement.

**23. Extension of Lease Term.**  If Lessee fails to purchase the Vehicle or otherwise comply with the provisions of Paragraph 22 above, Lessor may, in its sole and absolute discretion, extend the Term of the Lease.  During such lease extension, the lease payment amount shall equal at least the Monthly Lease Payment set forth above and all the provisions hereof shall continue in full force and effect.

**24. Notices.**  Any written notice or demand under the Lease shall be given to a party by mailing it to the party at its address set forth above, or at such address as the party may provide in writing from time to time.  Notice or demand so mailed shall be effective when deposited in the United States mail, duly addressed and with postage prepaid.

**25. Financial Information.**  Lessee shall provide Lessor with continuing periodic financial statements at intervals of not less than every year from the date of the lease, which financial statements shall consist of a balance sheet and a statement of earnings of Lessee, such statements to be prepared in accordance with generally accepted accounting principles.  In addition, Lessee shall provide copies of annual state and federal tax returns.

**26. Facsimiles.**  For convenience, Lessor may accept a facsimile copy of the Lease with facsimile signatures.  Lessee agrees a facsimile copy will be treated as an original and will be admissible as evidence of the lease.

**27. Additional Action.**  Lessee will promptly execute and deliver to Lessor such further documents and take such further action as Lessor may request in order to carry out more effectively the intent and purpose of the Lease.  Lessor and any assignee of Lessor is authorized to file one or more Uniform Commercial Code financing statements without the signature of Lessee.  Lessee hereby grants to Lessor a power of attorney in Lessee's name, to apply for a certificate of title for any item of Equipment/Vehicle that is required to be titled under the laws of any jurisdiction where the Vehicle(s) is or may be used and/or to transfer title thereto upon the exercise by

INITIALS

**Exhibit 1    Page 7 of 9**

# QUALITY LEASING CO., INC.

Lessor of its remedies upon an Event of Default by Lessee under the Lease. Lessee will pay (or reimburse Lessor for) the reasonable costs and expenses related to (a) filing any financing, continuation or termination statements, (b) any title and lien searches with respect to the Lease and the Vehicle(s), (c) any documentary stamp taxes relating to the Lease, and (d) procuring certified charter documents and good standing certificates of Lessee and any guarantor of Lessee's obligations hereunder. Lessee will do whatever may be necessary to have a statement of the interest of Lessor and any assignee of Lessor in the Equipment/Vehicle noted on any certificate of title relating to the Equipment/Vehicle and will deliver said certificate to Lessor. If Lessee fails to perform or comply with any of its agreements, Lessor may perform or comply with such agreements in its own name or in Lessee's name as attorney-in-fact and the amount of any payments and expenses of Lessor incurred in connection with such performance or compliance, together with interest thereon at the rate provided below, shall be deemed rent payable by Lessee upon demand.

28. **Venue and Jurisdiction.** LESSEE HEREBY AGREES THAT ALL ACTIONS OR PROCEEDINGS ARISING DIRECTLY OR INDIRECTLY FROM OR IN CONNECTION WITH THE LEASE SHALL BE LITIGATED IN THE STATE OF THE LESSOR'S PRINCIPAL PLACE OF BUSINESS. Lessee consents to the jurisdiction and venue of the foregoing courts and consents that any process or notice of motion or other application to either of such courts or a judge thereof may be served inside or outside the state of the Lessor's principal place of business by registered or certified mail, return receipt requested, directed to Lessee at its address set forth in the Lease (and service so made shall be deemed complete five (5) days after the same has been posted as aforesaid) or by the personal service, or in such other manner as may be permissible under the rules of such courts. Lessee appoints each and every officer of Lessor as agent for the purpose of accepting service off any process within the state of the Lessor's principal place of business, subject only to the condition that the officer promptly mail a copy of that process to Lessee at its address for notices hereunder.

29. **Jury Trial Waiver.** EACH OF THE PARTIES HEREBY UNCONDITIONALLY WAIVES ITS RIGHTS TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THE LEASE, ANY RELATED DOCUMENTS, ANY DEALINGS BETWEEN LESSEE AND LESSOR RELATING TO THE SUBJECT MATTER OF THIS TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN LESSEE AND LESSOR. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE, MEANING THAT IT MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THE LEASE, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION. IN THE EVENT OF LITIGATION, THE LEASE MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

30. **Entire Agreement; Miscellaneous.** Whenever the sense of the Lease requires, words in the singular shall be deemed to include the plural and words in the plural shall be deemed to include the singular. If more than one Lessee is named herein the liability of each shall be joint and several. This written Master Lease and any Supplement(s) ("Agreement") constitute the entire mutual understanding of the parties regarding the within subject matter and may not be modified except in writing, signed by the party against whom such modification is asserted. Lessee shall have no option or other rights to purchase or otherwise acquire title to or ownership of any of the Equipment unless such option is set expressly forth in a writing signed by a duly authorized officer of Lessor. Upon the request of Lessor, Lessee shall at any time and from time to time after the execution and delivery of the Lease, execute and deliver such further documents and do such further acts as Lessor may reasonably request in order fully to effect the purposes of this Lease, and any assignment hereof. Lessee hereby authorizes Lessor, at its option and as contemplated by Section 9-408 of the UCC or otherwise, to file financing statements covering the Equipment signed only by Lessor, and agrees to pay Lessor the actual fee for such filing, recording or stamp fees or taxes arising from the filing or recording of any such instrument or statement. In the event a court with competent jurisdiction rules that the Lease is a secured transaction governed by usury laws and that the interest rate charged under the Lease exceeds the maximum rate of interest allowed by applicable law, then the effective rate of interest hereunder shall be automatically reduced to the maximum lawful rate allowable under the applicable usury laws. Time is of the essence. The Lessee agrees and acknowledges that Lessor or its assignee is authorized and may report payments, timeliness and failure of Lessee to make payments in accordance with the Master Lease and any Supplement(s).

31. **Choice of Law.** THE LEASE SHALL BE CONSTRUED UNDER THE LAWS OF THE STATE OF INDIANA OR THE LESSOR'S PRINCIPAL PLACE OF BUSINESS, WITHOUT REGARD TO PRINCIPLES OF CONFLICT OF LAW OR CHOICE OF LAW. This Master Lease shall not become effective until accepted by Lessor at its above-described office, and upon such acceptance shall, subject to Section 15 hereof, inure to and bind the parties, their successors, legal representatives and assigns. No provision hereof that may be construed as unenforceable shall in any way invalidate any other provision hereof, all of which shall remain in full force and effect. All representations, warranties, indemnities and agreements of Lessee contained in the Agreement shall survive and continue in full force and effect notwithstanding termination or expiration of the Lease.

WARNING: No agent or employee of Seller is authorized to bind Lessor to the Lease, to alter or waive any term or condition hereof, or to add any provision hereto, notwithstanding any compensation or benefit that may be given by Lessor to Seller or any agent or employee of Seller.

THE UNDERSIGNED AGREE TO ALL TERMS AND CONDITIONS SET FORTH ABOVE AND IN ANY SUPPLEMENT(S) AND IN WITNESS THEREOF HEREBY EXECUTE THIS MASTER LEASE AGREEMENT.

THIS MASTER LEASE AGREEMENT INCLUDES A JURY TRIAL WAIVER.

8 of 9

INITIALS

Exhibit 1     Page 8 of 9

# QUALITY LEASING CO., INC.

| NONE OF THE PROVISIONS OF THIS MASTER LEASE CAN BE AMENDED, MODIFIED OR WAIVED EXCEPT IN A WRITING SIGNED BY THE LESSEE AND LESSOR | LESSEE INITIALS: |
|---|---|

The undersigned warrants that she/he is a duly authorized corporate officer, partner, member, manager, representative or proprietor of the above named Lessee.

LESSEE: FORDE TRUCKING INC.

By: _____  MEMBER
CALVERT FORDE          TITLE

Date: 08/01/2014

STATE OF *North Carolina*
COUNTY OF *Mecklenburg* )  ) SS ████████████

Before me, a Notary Public in and for said County and State, personally appeared *Calvert Forde* who acknowledged the execution of the above and foregoing document.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my Notary Seal this ___ day of *August*, 2014.

*Mecklenburg*
County of Residence

*June 18, 2019*
My Commission Expires

Notary Public Signature

*Leonard S Refford*
Notary Public Printed

WITNESS BY: _____

LESSOR: Quality Leasing Co., Inc.

By: _____
KENDRA ROTHSCHILD

Title: OFF MGR

Date: 7/31/14

LEONARD S REFFORD
NOTARY PUBLIC
MECKLENBURG County, NC
My Commission Expires June 18, 2019

INITIALS

**Exhibit 1     Page 9 of 9**

# QUALITY LEASING CO., INC.

*7173 E 87th Street, Indianapolis, IN 46256*     *Phone 317-253-4415   Fax 317-845-9221*



## COVERLETTER

Enclosed are your lease documents. Included within are corresponding documents to your master lease, including a supplement for each vehicle. **When printing the documents, please be sure to print each page individually, not double sided.** Please sign where indicated and make a check payable to Quality Leasing for the amount shown on the invoice. Make a copy of the check, your driver's license(s), and a copy of all lease documents. Please keep a copy for your records. IF FUNDING FROM SCANNED DOCUMENTS, FIRST PAYMENT WILL BE DEBITED FROM COPY OF CHECK, OR ACCOUNT INFORMATION PROVIDED ON AUTOPAY FORM, UPON SIGNING OF LEASE DOCUMENTS.

In order to expedite funding, please have the insurance certificate read as follows:

Quality Leasing Co. Inc., ISAOA ATIMA
ADDITIONAL INSURED AND LOSS PAYEE
C/O VAN WAGENEN
PO BOX 390543   MINNEAPOLIS, MN  55439

Email a copy of all documents to your correspondent before overnighting all originals and original payment to Quality Leasing, using the FedEx label attached.

If you would like to opt in for emailed monthly statements, please select yes and add your email address below:

☑YES ☐NO   *fordetruckinginc@yahoo.com*

PLEASE VERIFY THE MONTHLY PAYMENT DUE DATE.  This will be your due date each month.  If you would prefer a different due date, please do not sign and contact your leasing consultant. New documents will be issued.

If you have any questions, please contact your leasing consultant.

*Calvert Forde*
CALVERT FORDE

Date *02/15/16*

INITIALS *___*  INITIALS *___*

**Exhibit 2    Page 1 of 12**

# $Q$UALITY LEASING CO., INC.

7173 E 87th Street, Indianapolis, IN 46256          Phone 317-253-4415   Fax 317-845-9221

## Supplement to Master Lease
*(Option to Purchase (Fixed Price)*

**Lease#** ▮▮▮▮▮▮▮▮

Dated 2/15/2017

Name and Address of Lessee:          FORDE TRUCKING INC.
PO BOX 562655
CHARLOTTE NC 28256

> Notice:  Lessor reserves the right to withdraw the terms of this Supplement and issue a modified Supplement without notice to Lessee if Lessor is not in receipt of a fully executed original or facsimile of this document within five (5) business days of the date of this Supplement. However, in that event, no such modifications will be binding on Lessee unless and until Lessee executed the modified document containing all such modifications.

This is a Supplement to the Master Lease identified above between Lessor and Lessee (the "Master Lease"). All terms and conditions of the Master Lease are incorporated herein by reference and are made a part of this Supplement. Upon the execution and delivery by Lessor and Lessee of this Supplement, Lessor hereby agrees to lease to Lessee, and Lessee hereby agrees to lease from Lessor, the equipment described below upon the terms and conditions of this Supplement and the Master Lease. All terms and conditions of the Master Lease and all Supplements executed by the Parties shall remain in full force and effect except to the extent expressly modified by this Supplement.  This Supplement and the Master Lease are hereinafter referred to as the "Lease".

| LEASE | QTY | DESCRIPTION OF LEASED EQUIPMENT/VEHICLE YEAR, MAKE, MODEL NAME/NO., SERIAL NO. OR OTHER IDENTIFICATION | MILEAGE |
|---|---|---|---|
| 98100 | 1 | 2004 MACK GRANITE  VIN#1M2AG11C24M015589 | 667082 |
| 98101 | 1 | 2004 MACK GRANITE  VIN#1M2AG11C74M015586 | 627234 |
| 98102 | 1 | 2004 MACK GRANITE  VIN#1M2AG11C54M013299 | 635184 |
| | | NOT TAX EXEMPT / DEALER PAYING $300 TAX PER LEASE | |

After Lessee signs this Supplement, Lessee authorizes Lessor to insert any missing information or change any inaccurate information (such as the model year of the Equipment or its serial number or VIN) into this Supplement or to include an attachment to this Agreement describing the Equipment.

**Equipment Location:**  9422 MELANIE THOMPSON DR CHARLOTTE NC 28213
**LEASE(S) 98100-98102**

| SUMMARY OF PAYMENT TERMS PER EACH LEASE LISTED ABOVE | |
|---|---|
| Initial Term (Months):  60 | First Payment Due Date:  2/20/2017 |
| Payment Frequency:  MONTHLY | Mileage Allowance per Month: EXEMPT |
| Rental Payment Per Each Lease: $1,578.78   NO SALES TAX INCLUDED | Interim Rent Rate Per Each Lease: $0.00   NO SALES TAX INCLUDED   (SUBJECT TO CHANGE) |
| Auto Pay Required:   REQUIRED | End Date:  2/20/2022 |
| If cancelled/refused, Rental Payment Per Each Lease for remaining months:$1,552.64   NO SALES TAX INCLUDED | Security Deposit Per Each Lease:  $0.00 NO SALES TAX INCLUDED |
| Number of Installments:  60 | Down Payment Per Each Lease: $3,600.00   NO SALES TAX INCLUDED |

**End of Term Agreement:**

1.  In addition to paying the Total Basic Rent when and as due under the Master Lease, Lessee shall have the option to purchase the Equipment for a fixed price and if this option is exercised, agrees to pay Lessor **$101.00**  for each lease on the expiration date of the initial term of the Lease(s) (the "Final Purchase Payment"). At least ten (10) days prior to the expiration of the initial term Lessee shall notify Lessor in writing of Lessee's decision to exercise the option to purchase the Equipment.

2.  Upon receipt of the Total Basic Rent and the Final Purchase Payment by Lessor, the Equipment shall be deemed transferred to Lessee at its then location. Lessor hereby warrants that at the time of transfer the Equipment will be free of all security interests and other liens created by Lessor or in favor of persons claiming through Lessor.  LESSOR MAKES NO OTHER WARRANTY WITH RESPECT TO THE EQUIPMENT, EXPRESS OR IMPLIED, AND SPECIFICALLY DISCLAIMS

1 of 4          INITIALS____ INITIALS____

Exhibit 2    Page 2 of 12

ANY WARRANTY OF MERCHANTABILITY AND OF FITNESS FOR A PARTICULAR PURPOSE AND ANY LIABILITY FOR CONSEQUENTIAL DAMAGES ARISING OUT OF THE USE OF OR THE INABILITY TO USE THE EQUIPMENT. THE PARTIES AGREE THE EQUIPMENT IF THE OPTION IS EXERCIESD IS SOLD "AS-IS".

3.  If Lessee elects to exercise the option to purchase and then fails to pay the Final Purchase Payment when due, it shall constitute an "Event of Default" under the Master Lease.

4.  Lessee agrees to pay all sales and use taxes arising on account of the sale of the Equipment to Lessee.

5.  Lessor agrees upon termination of Lease, to transfer title into purchaser's/Lessee's name, and out of Quality Leasing Co Inc's name in 30 days from date of receipt of title via certified mail or Federal Express. Quality Leasing Co. Inc. will no longer be responsible for this asset once title is sent to the Lessee. If the Lessee requires a duplicate title for any reason, a $500.00 fee will apply.

Lessor makes no representation with respect to the income tax consequences of the transaction evidenced by the Lease. Lessor will treat the Lease as a sale regardless of how the Lease is treated by Lessee.

**Amendments Regarding the Master Lease:** For the purposes of this Supplement only and assuming Lessee has elected to exercise the option to purchase and no Event of Default occurs during the term of the Master Lease, Paragraph 21 (relating to return of Equipment) of the Master Lease is amended and hereby modified to eliminate Lessee's obligation to return the Equipment to Lessor.

| **Fees associated with Lease:** | Insufficient Funds Fee (NSF) $35.00 |
| | Stop or hold auto pay with 5 day notice $35.00 |
| | Due date change request $35.00 |
| | Title not returned $250.00 |
| | Original lease documents not returned $250.00 |
| | Payment over the phone $4.95 |
| | Toll charge processing $20.00 |

**Certification of Lessee:** Lessee hereby certifies to Lessor, under penalty of perjury, that Lessee intends more than 50% of the use of the Equipment is to be in a trade or business of Lessee. Lessee has been advised, understands and agrees that Lessee will not be treated as the owner of the Equipment/Vehicle for federal tax purposes.

Lessor: **Quality Leasing Co., Inc.**

By    ALYSSA LAWRENCE

    LEASE ADMIN
Title

    2/20/2017
Rent Commencement Date

Lessee: FORDE TRUCKING INC.

By    CALVERT FORDE    TITLE

By        TITLE

INITIALS_____ INITIALS

**Exhibit 2    Page 3 of 12**

 **QUALITY LEASING CO., INC.**



*7173 E 87th Street, Indianapolis, IN 46256*     *Phone 317-253-4415   Fax 317-845-9221*

### INVOICE

Lessee:     FORDE TRUCKING INC.
            PO BOX 562655
            CHARLOTTE, NC 28256

### PLEASE RETURN COPY OF INVOICE WITH PAYMENT

| Lease | Amount | Sales Tax | 2/20/2017 | Total Payment |
|-------|--------|-----------|-----------|---------------|
| 98100<br>Cap Cost | $1,578.78<br>$3,600.00 | $0.00<br>$0.00 | | $1,578.78<br>$3,600.00 |
| 98101<br>Cap Cost | $1,578.78<br>$3,600.00 | $0.00<br>$0.00 | | $1,578.78<br>$3,600.00 |
| 98102<br>Cap Cost | $1,578.78<br>$3,600.00 | $0.00<br>$0.00 | | $1,578.78<br>$3,600.00 |
| | | | TOTAL | $15,536.34 |

\*\* IF FUNDING FROM SCANNED DOCUMENTS, AMOUNT DUE AT
SIGNING WILL BE DEBITED FROM COPY OF CHECK, OR ACCOUNT
INFORMATION PROVIDED ON AUTOPAY FORM, UPON SIGNING OF
LEASE DOCUMENTS.

INITIALS_____ INITIALS

# QUALITY LEASING CO., INC.

*7173 E 87th Street, Indianapolis, IN 46256*

## Authorization for Auto Payment

I hereby authorize Quality Leasing Co, Inc. to make withdrawals to my bank account or charge my credit card below on a monthly basis until my lease is terminated.. I also agree to contact Quality Leasing Co, Inc. if there are any changes to my information.

Customers Name: **FORDE TRUCKING INC.**

Monthly payment amount: **$4,736.3**

AUTOPAY REQUIRED OR RECOMMENDED: __REQUIRED__

Monthly payment will be deducted on the 20TH of every month from auto pay starting: **3/20/17**

***A 3% fee will be added to the monthly payment if auto pay (ACH) is removed at any time for required leases***

Signature for Authorization: _____

If you would like to opt in for emailed monthly statements, please select yes and add your email address below:

☐ YES ☐ NO _____

---

## For Credit/Debit Card Payments:

Cardholders Name: _____     Type:     AMX / VISA / MASTERCARD

Billing Address: _____City:_____State:_____Zip:_____

Card Number: _____

Expiration Date: _____     Security code: _____

Cardholders Signature: _____     Date: _____

---

## For ACH/Checking or Savings Withdrawals:

Name on bank account: _____     Type:   CHECKING     SAVINGS

Bank Routing #: _____ (9 digits)   Account #: _____

Name of Bank: _____     Please attach a voided check in the space below

**AUTO PAY WILL NOT BE HELD OR STOPPED UNLESS SUBMITTED IN WRITING AT LEAST FIVE DAYS IN ADVANCE OF PAYMENT DATE. A $35.00 fee will be charged for all NSF, returned ACH payments, stop or held payments or due date changes.

4 of 4                     INITIALS____ INITIALS

**Exhibit 2     Page 5 of 12**

# QUALITY LEASING CO., INC.

7173 E 87th Street, Indianapolis, IN 46256        Phone 317-253-4415   Fax 317-845-9221



## Supplement to Master Lease
ACKNOWLEDGMENT OF DELIVERY AND RECEIPT

Supplement Dated 2/15/2017

Name and Address of Lessee: FORDE TRUCKING INC.
                            PO BOX 562655
                            CHARLOTTE NC 28256

**LEASE 98100**
Equipment/Vehicle Description:        **2004 MACK GRANITE**

Serial Number (if applicable) or VIN   **1M2AG11C24M015589**

**LEASE 98101**
Equipment/Vehicle Description:        **2004 MACK GRANITE**

Serial Number (if applicable) or VIN   **1M2AG11C74M015586**

**LEASE 98102**
Equipment/Vehicle Description:        **2004 MACK GRANITE**

Serial Number (if applicable) or VIN   **1M2AG11C54M013299**

The above named Lessee, acknowledges that they received and accepted from Quality Leasing Co., Inc., Lessor, the Equipment/Vehicle described above and in the Master Lease Agreement in good condition and repair; subject to all the terms and conditions of the Master Lease entered into between them and that the Equipment/Vehicle is in all material respects as described in the Master Lease.

Acknowledgment of Delivery and Receipt of Equipment:

By: _____        Date: _02/15/17_
Printed: **CALVERT FORDE**        TITLE
      Lessee or Lessee's Duly Authorized Agent

By: _____        Date: _02/15/17_
Printed:                          TITLE
      Lessee or Lessee's Duly Authorized Agent




 

**Q**UALITY LEASING CO., INC.

*7173 E 87th Street, Indianapolis, IN 46256*     *Phone 317-253-4415   Fax 317-845-9221*

## STATEMENT OF EXISTING LEASE AGREEMENT

The following statement must be properly signed by both Lessor and Lessee, and presented to the Bureau of Motor Vehicles for title/registration of all leased motor vehicles.

NAME     **QUALITY LEASING CO., INC.**
         **7173 E 87TH STREET**
         **INDIANAPOLIS, IN 46256**

Are the owners of: 2004 MACK GRANITE

Identification # **1M2AG11C24M015589**

LESSEE     FORDE TRUCKING INC.
           9422 MELANIE THOMPSON DR
           CHARLOTTE NC 28213

COUNTY _ MECKLENBURG

THE PLATE FEE AND COUNTY EXCISE TAX ARE TO BE PAID BY THE LESSEE
_XXXX_ LESSOR_____ (CHECK ONE) and will remain the property of same.  (If plate/excise ownership is different than indicated, an attached affidavit stating ownership is required).

## THIS AFFIDAVIT HAS BEEN REVIEWED, AND IS BEING SIGNED UNDER PENALTY OF PERJURY

Signed QUALITY LEASING CO INC_____          Date_____
         (Owner/Lessor)

By_____          _____ AGENT
      ALYSSA LAWRENCE

Signed FORDE TRUCKING INC._____          Date 2/15/17
         (Lessee)

By_____          President
      CALVERT FORDE                        TITLE

By_____          _____
                                           TITLE

INITIALS __ INITIALS __  

**Exhibit 2     Page 7 of 12**

 

# QUALITY LEASING CO., INC.

*7173 E 87th Street, Indianapolis, IN 46256*      *Phone 317-253-4415   Fax 317-845-9221*

## STATEMENT OF EXISTING LEASE AGREEMENT

The following statement must be properly signed by both Lessor and Lessee, and presented to the Bureau of Motor Vehicles for title/registration of all leased motor vehicles.

NAME      **QUALITY LEASING CO., INC.**
          **7173 E 87TH STREET**
          **INDIANAPOLIS, IN 46256**

Are the owners of: 2004 MACK GRANITE

Identification # 1M2AG11C74M015586

LESSEE      FORDE TRUCKING INC.
            9422 MELANIE THOMPSON DR
            CHARLOTTE NC 28213

COUNTY _MECKLENBURG_

THE PLATE FEE AND COUNTY EXCISE TAX ARE TO BE PAID BY THE LESSEE
_XXXX_ LESSOR_____ (CHECK ONE) and will remain the property of same. (If plate/excise ownership is different than indicated, an attached affidavit stating ownership is required).

## THIS AFFIDAVIT HAS BEEN REVIEWED, AND IS BEING SIGNED UNDER PENALTY OF PERJURY

Signed _QUALITY LEASING CO INC_          Date_____
          (Owner/Lessor)

By_____          _____ AGENT _____
      ALYSSA LAWRENCE

Signed _FORDE TRUCKING INC._          Date_____
          (Lessee)

By_____          _President_
      CALVERT FORDE                          TITLE

By_____          _____
                                              TITLE

INITIALS _____ INITIALS _____ 

**Exhibit 2   Page 8 of 12**

 UALITY LEASING CO., INC.

7173 E 87th Street, Indianapolis, IN 46256          Phone 317-253-4415   Fax 317-845-9221



## STATEMENT OF EXISTING LEASE AGREEMENT

The following statement must be properly signed by both Lessor and Lessee, and presented to the Bureau of Motor Vehicles for title/registration of all leased motor vehicles.

NAME          **QUALITY LEASING CO., INC.**
              **7173 E 87TH STREET**
              **INDIANAPOLIS, IN 46256**

Are the owners of: 2004 MACK GRANITE

Identification # 1M2AG11C54M013299

LESSEE        FORDE TRUCKING INC.
              9422 MELANIE THOMPSON DR
              CHARLOTTE NC 28213

COUNTY   MECKLENBURG

THE PLATE FEE AND COUNTY EXCISE TAX ARE TO BE PAID BY THE LESSEE
_XXXX_ LESSOR_____ (CHECK ONE) and will remain the property of same.  (If plate/ excise ownership is different than indicated, an attached affidavit stating ownership is required).

## THIS AFFIDAVIT HAS BEEN REVIEWED, AND IS BEING SIGNED UNDER PENALTY OF PERJURY

Signed QUALITY LEASING CO INC                    Date_____
          (Owner/Lessor)

By   _Alyssa Lawrence_                            _____ AGENT _____
        ALYSSA LAWRENCE


Signed FORDE TRUCKING INC.                        Date_____
          (Lessee)

By   _Calvert Forde_                              _President_
        CALVERT FORDE                                TITLE


By_____                         _____
                                                       TITLE

INITIALS____ INITIALS____ 



# QUALITY LEASING CO., INC.

*7173 E 87th Street, Indianapolis, IN 46256*      *Phone 317-253-4415   Fax 317-845-9221*



## INSURANCE AGREEMENT

DATE:      2/15/2017

Lessee Name:   FORDE TRUCKING INC.
PO BOX 562655
CHARLOTTE, NC 28256

To provide protection against serious financial loss should an accident or damage occur. LESSEE understands that the lease contract requires that the vehicle and/or equipment be continuously covered with insurance for both liability insurance and physical damage insurance. LESSEE shall at their expense keep the vehicle and/or equipment insured, throughout the term of this lease, against the hazards of all risk of loss and the full REPLACEMENT cost thereof and comprehensive liability insurance for limits of **Primary Liability of not less than $1,000,000 per occurrence for bodily injury, NON-Trucking Liability of not less than $1,000,000 per occurrence for both bodily injury and Physical Damage, with a deductible of no more than $1,000.00.**

Failure to provide such insurance gives QUALITY LEASING CO., INC. the right to declare the entire unpaid balance immediately due and payable.

We have on this date leased the following Equipment/Vehicles from QUALITY LEASING CO., INC.

| LEASE | QUANTITY | DESCRIPTION OF LEASED EQUIPMENT/VEHICLE YEAR, MAKE, MODEL NAME/NO., SERIAL NO. OR OTHER IDENTIFICATION | MILEAGE |
|---|---|---|---|
| 98100 | 1 | 2004 MACK GRANITE  VIN#1M2AG11C24M015589 | 667082 |
| 98101 | 1 | 2004 MACK GRANITE  VIN#1M2AG11C74M015586 | 627234 |
| 98102 | 1 | 2004 MACK GRANITE  VIN#1M2AG11C54M013299 | 635184 |

Our agent will insure this equipment listing **QUALITY LEASING CO, INC. ISAOA ATTMA** as **Additional Insured** and **Loss Payee.** Policies should be addressed to P.O. Box 390543, Minneapolis, MN 55439-0543.

AGENT _____

ADDRESS _____

PHONE # _____

INSURANCE COMPANY _____

PHYSICAL DAMAGE INSURANCE                    LIABILITY INSURANCE
_____   POLICY NUMBER            _____
_____   POLICY EXPIRATION DATE   _____
                  FULL INSURANCE REPLACEMENT COST
                  $228,480.00

FORDE TRUCKING INC.
LESSEE
BY:_____    ⬅ BY: _President_
      CALVERT FORDE        (Title)                    (Title)

This policy will be in the name of _____
(if different from above)
Verified by:_____ with _____ Date _____

INITIALS ___ INITIALS ___   

 **QUALITY LEASING CO., INC.**



*7173 E 87th Street, Indianapolis, IN 46256*     *Phone 317-253-4415   Fax 317-845-9221*

# *COPY OF ALL DRIVERS LICENSES*

The Patriot Act of 2001 requires ALL SIGNORS (to include corp. secretary if different than signors) to show photo identification.

Lessee:     FORDE TRUCKING INC.

Lease #: ▮▮▮▮▮▮▮▮

Lease/Signor or Guarantor:   CALVERT  FORDE

PLEASE PLACE BELOW A COPY OF THEIR DRIVER'S LICENSE FOR EACH INDIVIDUAL WHO HAS SIGNED ANY OF THE TRANSACTION DOCUMENTS.



**Exhibit 2    Page 11 of 12**

INITIALS  INITIALS

 UALITY LEASING CO., INC. 

*7173 E 87th Street, Indianapolis, IN 46256*     *Phone 317-253-4415   Fax 317-845-9221*

## TITLING INSTRUCTIONS

**Enclosed are the documents you will need to title and/or plate your vehicle.**
- Title or copy of title
- Power of Attorney from Quality Leasing Co. Inc. for you to sign on our behalf
- Statement of Existing Lease Agreement
- Instructions on titling in your state

### Title is to be made out to show Owner or Lessor as:
QUALITY LEASING CO INC
7173 E 87TH ST
INDIANAPOLIS IN 46256

### Plates are to be registered in your name with your address

- The title MUST be returned to Quality Leasing Co. Inc. The title is required to be returned within 60 days of receipt of this packet or Quality Leasing Co Inc. will charge your account a $250.00 non-compliance fee.

- If you have acquired plates for your vehicle and were not required to title the vehicle in your state, please return all title paperwork to Quality Leasing Co. Inc. immediately.

- Please fax or email a copy of the title application and registration you receive from the DMV to 317-688-6563 or shohmann@qualityleasingco.com.

INITIALS _____ INITIALS _____ 

**Exhibit 2    Page 12 of 12**

# QUALITY LEASING CO., INC.

## PERSONAL GUARANTY

In consideration of Quality Leasing Co., Inc. ("Lessor") from time to time entering into any Master Lease Agreement or Supplement or any related document, extension, amendment or modification thereof regardless of date of execution (said documents may be referred to hereinafter either singularly or collectively as the "Agreement(s)" or "Instrument(s)") with **FORDE TRUCKING INC.** ("Lessee"), the undersigned (if more than one, then jointly and severally) as a direct and primary obligation, absolutely and unconditionally, guarantees to the Lessor and any assignee of the Lessor (either of whom are hereinafter called "Holder") the prompt payment of all rent and other amounts to be paid by Lessee to Lessor under the Agreement(s) and the performance of all terms, conditions, covenants and obligations of each and every of the Agreement(s), irrespective of any invalidity or unenforceability thereof or the existence of security for the Agreement(s).

The undersigned promises to pay all the holder's expenses, including reasonable attorney fees incurred by or in enforcing all obligations under each and every Agreement or incurred by the holder in connection with enforcing this Personal Guaranty.

The undersigned waives notice of acceptance hereof, presentment, demand, protest, notice of protest or of any defaults and consents that the holder may, without affecting the obligation hereunder, grant the Customer any extension or indulgence under any Agreement, and may proceed directly against the undersigned without first proceeding against the Customer or liquidation or otherwise disposing of any security afforded holder under any Agreement.

The obligations of each Guarantor hereunder shall in no way be affected or impaired by reason of the occurrence from time to time of any of the following with respect to the Master Lease, Supplement, or this Personal Guaranty (collectively, the "Instruments"), or with respect to the Premises, even though notice may not have been given to, or received from, or the further consent of either Guarantor or both Guarantors thereto may not have been obtained:

(i)     The waiver of the performance by Lessor or the breach or observance by Lessee of any agreement, covenant, term or condition to be performed or observed by it under the Instruments;

(ii)     The extension of the time for the payment of any sums owing or payable under the Instruments or the time for the performance of any obligation under or arising out of or on account of the Instruments;

(iii)     The supplementing, modification or amendment (whether material or otherwise) of any of the Instruments or any of the obligations of Lessee or Guarantor as set forth in the Instruments;

(iv)     Any failure, omission, delay or lack on the part of Lessor or any other person to enforce, assert or exercise any right, power or remedy conferred on such person in or by virtue of any of the Instruments, or any action on Lessor's or such person's part granting indulgence or extension in any form;

INITIALS

**Exhibit 3     Page 1 of 3**

# QUALITY LEASING CO., INC.

(v)　　The voluntary or involuntary liquidation, dissolution, sale of all or substantially all of the property, marshaling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition or readjustment of, or other similar application or proceeding affecting Lessee, Guarantor or any of their assets;

(vi)　　The sale, transfer or conveyance of the Equipment or any interest therein to any party, whether now or hereafter having or acquiring an interest in the Equipment;

(vii)　　The release of Lessee from the performance or observance of any of the agreements, covenants, terms or conditions contained in the Master Lease, Supplement, Agreement or related documents by operation of law.

The obligations of the Guarantor(s) hereunder are joint and several.  Moreover, if Lessor obtains the signature of more than one Guarantor in this Personal Guaranty, or obtains additional guaranty agreements, or both, each Guarantor agrees that Lessor, in Lessor's sole discretion, may (i) bring suit against all guarantors, jointly and severally or against any one or more of them, (ii) compound or settle with any one or more of the guarantors for such considerations as Lessor may deem proper, and (iii) release any one or more of the guarantors from liability.  Guarantors further agree that no such action shall impair the rights of Lessor to enforce the Guaranty against any remaining guarantor or guarantors, including either Guarantor or both Guarantors.

This Personal Guaranty shall be binding upon the respective heirs, executors, administrators, successors and assigns of the undersigned and shall continue until all obligations under each and every Agreement are fully satisfied.

This Personal Guaranty shall be construed according to the laws of the State of Indiana and the undersigned shall accept venue and be subject to the personal jurisdiction of any Federal or State Court in Indiana.

This Personal Guaranty may be signed in one or more counterparts and each shall be deemed and treated as an original. Facsimile copies of signatures shall be treated as an original signature and will be admissible as evidence of this lease.

THE UNDERSIGNED HEREBY UNCONDITIONALLY WAIVES THE RIGHT TO A JURY TRIAL OF ANY CLAIM OR CAUSE OF ACTION BASED UPON OR ARISING OUT OF, DIRECTLY OR INDIRECTLY, THIS PERSONAL GUARANTY, THE MASTER LEASE, ANY SUPPLEMENT, ANY RELATED DOCUMENTS, ANY AMENDMENTS, ANY MODIFICATIONS, ANY EXTENSIONS, ANY DEALINGS BETWEEN LESSEE AND LESSOR RELATING TO THE SUBJECT MATTER OF THE TRANSACTION OR ANY RELATED TRANSACTIONS, AND/OR THE RELATIONSHIP THAT IS BEING ESTABLISHED BETWEEN GUARANTOR, LESSEE AND LESSOR. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL ENCOMPASSING OF ANY AND ALL DISPUTES THAT MAY BE FILED IN ANY COURT (INCLUDING, WITHOUT LIMITATION, CONTRACT CLAIMS, TORT CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON LAW AND STATUTORY CLAIMS). THIS WAIVER IS IRREVOCABLE, AND MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THE WAIVER

INITIALS

**Exhibit 3　　Page 2 of 3**

# Q UALITY LEASING CO., INC.

SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS OR MODIFICATIONS TO THE MASTER LEASE, OR TO ANY OTHER DOCUMENTS OR AGREEMENTS RELATING TO THIS TRANSACTION OR ANY RELATED TRANSACTION, INCLUDING BUT NOT LIMITED TO THIS PERSONAL GUARANTY. IN THE EVENT OF LITIGATION, THIS PERSONAL GUARANTY MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY THE COURT.

**GUARANTOR #1**

_____
Signature (individual, joint and several)

CALVERT FORDE    (704)651-6127
Print Name          Phone Number

9422 MELANIE THOMPSON DR.
CHARLOTTE, NC 28213
Address

S.S # ▮▮▮▮▮▮▮

**GUARANTOR #2**

√_____
Signature (individual, joint and several)

_____    √(     )_____
Print Name          Phone Number

_____
_____
Address

S.S # _____

**Notary for Guarantor # 1**
STATE OF NC                    )
COUNTY OF MECKLENBURG    ) SS:

On the 11 day of AUGUST_____, 2014, before me personally came CALVERT FORDE_____( Guarantor #1), to me know, who being by me duly sworn did depose and say that he resided in CHARLOTTE, N.C._____, that (s)he freely and voluntarily enters into and signs this Personal Guaranty.

_____
(Notary Public)
Printed: THERESA SPIERS
County of Residence CABARRUS

```
THERESA SPIERS
NOTARY PUBLIC
CABARRUS COUNTY, NC
MY COMMISSION EXPIRES 12-14-2016
```
My Commission Expires 12/14/16

**Notary for Guarantor # 2**
STATE OF _____        )
COUNTY OF _____    ) SS:

On the _____ day of _____, 20___, before me personally came _____( Guarantor #2), to me know, who being by me duly sworn did depose and say that he resided in _____, that (s)he freely and voluntarily enters into and signs this Personal Guaranty.

_____
(Notary Public)
Printed:_____
County of Residence_____        My Commission Expires_____

WITNESS BY:_____

INITIALS _____

**Exhibit 3     Page 3 of 3**

STATE OF NORTH CAROLINA
Marion Superior Court 1

98/00 Ford

MVR-191 (Rev. 01/2017)

# CERTIFICATE OF TITLE

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE | BODY STYLE |
|---|---|---|---|
| 1M2AG11C24M015589 | 2004 | MACK | TK |

| TITLE NUMBER | TITLE ISSUE DATE | PREVIOUS TITLE NUMBER |
|---|---|---|
| 771507180311909  * DUPLICATE * | 02/02/2018 | 774343173482930 |

ODOMETER READING

ODOMETER STATUS

TITLE BRANDS

MAIL TO

STAR FINANCIAL BANK
3610 RIVER CROSSING PKWY STE 100
INDIANAPOLIS  IN  46240-2194

OWNER(S) NAME AND ADDRESS

QUALITY LEASING CO INC
7173 EAST 87TH STREET
INDIANAPOLIS  IL  46256



The Commissioner of Motor Vehicles of the State of North Carolina hereby certifies that an application for a certificate of title for the herein described vehicle has been filed pursuant to the General Statutes of North Carolina and based on that application, the Division of Motor Vehicles is satisfied that the applicant is the lawful owner. Official records of the Division of Motor Vehicles reflect vehicle is subject to the liens, if any, herein enumerated at the date of issuance of this certificate.

As WITNESS, his hand and seal of this Division of the day and year appearing in this certificate as the title issue date.

COMMISSIONER OF MOTOR VEHICLES

| FIRST LIENHOLDER: | DATE OF LIEN 12/14/2017 |
|---|---|

STAR FINANCIAL BANK
3610 RIVER CROSSING PKWY STE 100
INDIANAPOLIS  IN  46240-2194

LIEN RELEASED BY:
SIGNATURE_____
TITLE_____DATE_____

| SECOND LIENHOLDER: | DATE OF LIEN |
|---|---|

LIEN RELEASED BY:
SIGNATURE_____
TITLE_____DATE_____

| THIRD LIENHOLDER: | DATE OF LIEN |
|---|---|

LIEN RELEASED BY:
SIGNATURE_____
TITLE_____DATE_____

| FOURTH LIENHOLDER: | DATE OF LIEN |
|---|---|

LIEN RELEASED BY:
SIGNATURE_____
TITLE_____DATE_____

ADDITIONAL LIENS:

**Exhibit 4    Page 1 of 3**      909  TIMDBAR    101453972

ANY ALTERATIONS OR ERASURES VOID TITLE

STATE OF NORTH CAROLINA

*98101 Forde*

MVR-191 (Rev. 01/2017)

# CERTIFICATE OF TITLE

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE | BODY STYLE |
|---|---|---|---|
| 1M2AG11C74M015586 | 2004 | MACK | TK |

| TITLE NUMBER | TITLE ISSUE DATE | PREVIOUS TITLE NUMBER |
|---|---|---|
| 771499180311909 * DUPLICATE * | 02/02/2018 | 774347173488930 |

**ODOMETER READING**

**ODOMETER STATUS**

**TITLE BRANDS**

MAIL TO

STAR FINANCIAL BANK
3610 RIVER CROSSING PKWY STE 100
INDIANAPOLIS   IN   46240-2194

OWNER(S) NAME AND ADDRESS

QUALITY LEASING CO INC
7173 EAST 87TH STREET
INDIANAPOLIS   IL   46256

The Commissioner of Motor Vehicles of the State of North Carolina hereby certifies that an application for a certificate of title for the herein described vehicle has been filed pursuant to the General Statutes of North Carolina and based on that application, the Division of Motor Vehicles is satisfied that the applicant is the lawful owner. Official records of the Division of Motor Vehicles reflect vehicle is subject to the liens, if any, herein enumerated at the date of issuance of this certificate.

As WITNESS, his hand and seal of this Division of the day and year appearing in this certificate as the title issue date.

COMMISSIONER OF MOTOR VEHICLES

| FIRST LIENHOLDER: | DATE OF LIEN 12/14/2017 | LIEN RELEASED BY: |
|---|---|---|
| STAR FINANCIAL BANK 3610 RIVER CROSSING PKWY STE 100 INDIANAPOLIS   IN   46240-2194 | | SIGNATURE _____ TITLE _____ DATE _____ |

| SECOND LIENHOLDER: | DATE OF LIEN | LIEN RELEASED BY: |
|---|---|---|
| | | SIGNATURE _____ TITLE _____ DATE _____ |

| THIRD LIENHOLDER: | DATE OF LIEN | LIEN RELEASED BY: |
|---|---|---|
| | | SIGNATURE _____ TITLE _____ DATE _____ |

| FOURTH LIENHOLDER: | DATE OF LIEN | LIEN RELEASED BY: |
|---|---|---|
| | | SIGNATURE _____ TITLE _____ DATE _____ |

ADDITIONAL LIENS:

**Exhibit 4     Page 2 of 3**     909   TIMOBAR     101453970

**ANY ALTERATIONS OR ERASURES VOID TITLE**

# STATE OF NORTH CAROLINA

*98/02  Forde*

MVR-191 (Rev. 01/2017)

## CERTIFICATE OF TITLE

| VEHICLE IDENTIFICATION NUMBER | YEAR MODEL | MAKE | BODY STYLE |
|---|---|---|---|
| 1M2AG11C54M013299 | 2004 | MACK | TK |

| TITLE NUMBER | TITLE ISSUE DATE | PREVIOUS TITLE NUMBER |
|---|---|---|
| 771503180315909 * DUPLICATE * | 02/02/2018 | 774345173480930 |

MAIL TO

STAR FINANCIAL BANK
3610 RIVER CROSSING PKWY STE 100
INDIANAPOLIS  IN  46240-2194

ODOMETER READING

ODOMETER STATUS

TITLE BRANDS

OWNER(S) NAME AND ADDRESS

QUALITY LEASING CO INC
7173 EAST 87TH STREET
INDIANAPOLIS  IL  46256

The Commissioner of Motor Vehicles of the State of North Carolina hereby certifies that an application for a certificate of title for the herein described vehicle has been filed pursuant to the General Statutes of North Carolina and based on that application, the Division of Motor Vehicles is satisfied that the applicant is the lawful owner. Official records of the Division of Motor Vehicles reflect vehicle is subject to the liens, if any, herein enumerated at the date of issuance of this certificate.

As WITNESS, his hand and seal of this Division of the day and year appearing in this certificate as the title issue date.

COMMISSIONER OF MOTOR VEHICLES

FIRST LIENHOLDER:          DATE OF LIEN 12/14/2017
STAR FINANCIAL BANK
3610 RIVER CROSSING PKWY STE 100
INDIANAPOLIS  IN  46240-2194

LIEN RELEASED BY:
SIGNATURE _____
TITLE _____ DATE _____

SECOND LIENHOLDER:          DATE OF LIEN

LIEN RELEASED BY:
SIGNATURE _____
TITLE _____ DATE _____

THIRD LIENHOLDER:          DATE OF LIEN

LIEN RELEASED BY:
SIGNATURE _____
TITLE _____ DATE _____

FOURTH LIENHOLDER:          DATE OF LIEN

LIEN RELEASED BY:
SIGNATURE _____
TITLE _____ DATE _____

ADDITIONAL LIENS:

**Exhibit 4     Page 3 of 3**

909  TIMOBAR

101453971

## ANY ALTERATIONS OR ERASURES VOID TITLE

| POLICY NO.  ▮▮▮▮  CERT. NO. | **SWORN STATEMENT IN PROOF OF LOSS (TRUCK)** | B&C166-18    191971 |
|---|---|---|

**SWORN STATEMENT**
**IN PROOF OF LOSS (TRUCK)**

POLICY NO. ▮▮▮▮▮ CERT. NO.

$ 72,000.00    CTF$

AMOUNT OF POLICY

11/18/2016   TO   9/19/2017

POLICY PERIOD

B&C166-18    191971

COMPANY CL. NO.

G. Taylor Inc.

AGENCY

Charlotte, NC

OUR NO

LOCATION

To:  Great Lakes Insurance SE
(NAME OF COMPANY)

By the above number policy of insurance, you insured Forde Trucking, Inc.
(hereinafter called the insured) against loss or
damage to the automobile described as follows:

| Model Year | Make | Type of Body | Motor | Numbers Serial | State License |
|---|---|---|---|---|---|
| 2004 | Mack | Truck | Mack E.7 460 | 1M2AG11C24M015589 | |

**Origin:**  A loss caused by APD/Overturn occurred on the 1st day of April , 2017
about the hour of 1.30 P.    M., the full particulars of which are as follows:
The insured's driver was unlevel when attempting to unload a load, causing the truck to overturn onto the passenger side.

**Title and Interest:**  The insured was the sole owner of the automobile at the time of the loss or damage and no other person had any interest therein  by bailment lease, conditional sale, mortgage or other encumbrance or otherwise,
except  Quality Leasing Co. Inc. AND Star Financial Bank
At the time of this loss, there was no other insurance on said automobile covering the same perils except.
None

**Other Insurance Use:**  At the time of this loss, the said automobile was being used for  Business
and was not being used to carry passengers for compensation or rental or leased for any illegal purpose
except  None

**Subrogation:**  The insured hereby covenants that no release has been or will be given to or settlement or compromise made with any third party who may be liable in damages to the insured and the insured in consideration of the payment made under this policy hereby subrogates the said Company to all rights and causes or action the said insured has against any person, persons, or corporations whomsoever for damage arising out of or incident to said loss or damage to said property and authorizes said Company to sue in the name of the insured but at the cost of the Company any such third party, pledging full cooperation in such action.

| Cash Value | Whole Loss | Amount Deductible | Amount Claimed Under This Policy |
|---|---|---|---|
| $65,392.75 | $70,392.75 | $2,500.00 | $67,892.75 |

The said loss did not originate by an act, design or procurement on my/our part nor on the part of anyone having interest in the property insured, or in the said policy of insurance; not in any consequence of any fraud or evil practice done or suffered by me/us and that no property saved has in any manner been concealed.
It is expressly understood and agreed that the furnishing of this blank or the preparation of proof by a representative of the above insurance company is not a waiver of any of its rights.

*FORDE TRUCKING INC*
*BY CALVERT FORDE*
X _____ Assured

STATE OF  North Carolina
COUNTY OF  Mecklenburg
Subscribed and sworn before me this 7 day of Febuary , 20 18

**DAVID MALDONADO**
Notary Public
Mecklenburg Co., North Carolina
My Commission Expires Oct. 22, 2023

INSURED'S RELEASE

_____ NOTARY PUBLIC
Exp 10/22 , 20 23

The above Insurance Company is hereby requested, authorized and empowered to pay, at its option, as follows
To  Forde Trucking, Inc. AND Quality Leasing Co. Inc. AND Star Financial Bank    the sum of $ 45,392.75
To  Forde Trucking, Inc. AND Southern Star of Charlotte (TIN: 56-1820207)    the sum of $ 5,000.00
To  _____    the sum of $ _____
Total Insured Loss and Damage    $ 50,392.75
in full settlement and satisfaction for all loss and damage for which claim is made in this proof of loss
In consideration of such payments, said company is hereby discharged and forever released from any and all further claim, demand or liability whatsoever for said loss and damage, under or by reason of said policy.

WITNESS: _____    Insured _____
WITNESS: _____    Loss Payee _____

**Exhibit 5    Page 1 of 1**

Date: **02/28/2019**
Amount: **45,392.75**
Check Number: **8831**
Account Number: ▮▮▮▮▮▮▮▮

8831

**Johnson Claim Service, Inc.**
Bell & Clements, Inc./JCS GLISE Loss Fund Account
3103 S. Juniper Avenue
Broken Arrow, OK 74012
918-455-3900

**Citizens Bank·**

5-7017/2110

2/13/2019

PAY TO THE
ORDER OF

Forde Trucking, Inc. AND Quality Leasing Co., Inc. AND Star Financial Bank

$ **45,392.75

. Forty-Five Thousand Three Hundred Ninety-Two and 75/100******************************************************************************** DOLLARS

MEMO
RK01761A16, DOL 4/1/17

AUTHORIZED SIGNATURE

⑈⑈008831⑈⑈ ⑈⑈211070175⑈⑈ ▮▮▮▮▮▮▮

PROPER ENDORSEMENT
REQUIRED FOR ALL PAYEE(S)

**Exhibit 6    Page 1 of 1**