UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| QUALITY LEASING CO., INC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:22-cv-00574-JRS-MPB |
| ) | |
| FORDE TRUCKING INC., ) | |
| CALVERT FORDE, ) | |
| CITIZENS BANK N.A., ) | |
| ) | |
| Defendants. ) | |

**Order on Motions for Summary Judgment**

This case involves an alleged breach of a lease agreement and conversion of a written instrument. Before the Court is Quality Leasing Co.'s Motion for Partial Summary Judgment, (ECF No. 29), and Citizens Bank's Motion for Summary Judgment, (ECF No. 35), which the Court treats as a cross-motion as to Count V of the Complaint, (ECF No. 1-1). For the following reasons, Quality's Motion for Partial Summary Judgment is **granted**, and Citizens' Cross-Motion for Summary Judgment is **denied**.

## I. Background

Count V of the Complaint is the only count alleged against Citizens. (ECF No. 1-1 at 9.) In that count, Quality alleges that Citizens is liable for conversion under Ind. Code § 26-1-3.1-420 for making payment on an instrument to a person not entitled to receive payment. (*Id.*) Quality brings claims against Forde Trucking Inc. and Calvert

Forde in separate counts, (*see id.* at 5–8), which are not at issue in the cross-motions for summary judgment.

The pertinent facts to Count V are undisputed. Quality and Forde Trucking entered into a lease agreement wherein Quality leased three vehicles to Forde Trucking. (ECF No. 30-1 at 5.) Quality owned these vehicles at all times relevant to this case. (*Id.*) Under the lease, Forde Trucking agreed to keep the vehicles insured against all risk of loss, with Quality listed as an additional insured and loss payee. (*Id.*) Accordingly, Forde Trucking obtained an insurance policy through Great Lakes Insurance SE. (*Id.*) On April 1, 2017, one of the leased vehicles ("Loss Vehicle") was involved in an accident. (*Id.*) Forde Trucking submitted to Great Lakes a Proof of Loss, which provided that Great Lakes was "requested, authorized and empowered to pay, at its option" to "Forde Trucking, Inc. AND Quality Leasing Co., Inc. AND Star Financial Bank the sum of $45,392.75." (*Id.* at 32.)

On February 13, 2019, Great Lakes issued a check payable to "Forde Trucking, Inc. AND Quality Leasing Co., Inc. AND Star Financial Bank" in the sum of $45,392.75. (*Id.* at 33.) This check represented the proceeds of the Loss Vehicle. (*Id.* at 6.) The check was drawn on a deposit account maintained with Citizens. (*Id.* at 33.) The back of the check included a stamped message that read "PROPER ENDORSEMENT REQUIRED FOR ALL PAYEE(S)." (*Id.*) Neither Quality nor Star Financial Bank ever received the check, and neither party endorsed the check. (*Id.* at 6.) However, in June 2019, Quality learned that Forde Trucking had deposited the check without Quality's endorsement or permission; and Forde Trucking retained the

2

proceeds of the check without remitting them to Quality. (*Id.*) Quality first contacted Forde Trucking and Great Lakes, demanding that the entire accelerated indebtedness owed pursuant to the lease agreement be paid in full. (*Id.*) This was unsuccessful. Citizens did not learn of this dispute until Quality filed this suit on February 15, 2022. (*See* ECF No. 1-1.)

## II. Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict" for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court views the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted). The Court need consider only materials cited by the parties but may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

When reviewing cross-motions for summary judgment, all reasonable inferences are drawn in favor of the party against whom the motion at issue was made. *Valenti v. Lawson*, 889 F.3d 427, 429 (7th Cir. 2018) (citing *Tripp v. Scholz*, 872 F.3d 857, 862 (7th Cir. 2017)). The existence of cross-motions for summary judgment does not imply that there are no genuine issues of material fact. *R.J. Corman Derailment Servs.,*

3

*LLC v. Int'l Union of Operating Eng'rs, Loc. Union 150, AFL-CIO*, 335 F.3d 643, 647 (7th Cir. 2003). The Court will consider each party's motion individually to determine whether that party has satisfied the summary judgment standard. *Blow v. Bijora, Inc.*, 855 F.3d 793, 797 (7th Cir. 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

### III. Discussion[1]

Ind. Code § 26-1-3.1-110(d) states, "[i]f an instrument is payable to two (2) or more persons not alternatively, it is payable to all of them and may be negotiated, discharged, or enforced only by all of them." Additionally, Ind. Code § 26-1-3.1-420(a) provides in pertinent part:

> The law applicable to conversion of personal property applies to instruments. An instrument is also converted if . . . a bank makes . . . payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment.

Citizens does not dispute that the check in question qualifies as an "instrument" under the statutes. Citizens also does not dispute that it was the payor bank regarding the check. (ECF No. 34 at 10.) Further, there is no dispute that the check was payable to Forde Trucking, Quality, and Star Financial Bank *not alternatively*, (*see* ECF No. 30-1 at 33; *see also* U.C.C. § 3-110 cmt. 4 (discussing an instrument being paid to "X and Y" compared to an instrument being paid to "X or Y")), and thus required the endorsement of *all* three parties for it to be enforced. Finally, Citizens does not dispute that the check was drawn on a deposit account maintained with

---

[1] On overlapping issues, Citizens makes identical arguments in its Response to Quality's Motion for Partial Summary Judgment, (ECF No. 34), as it does in support of its own Motion for Summary Judgment, (ECF No. 36).

Citizens, and that it made payment on the check despite the lack of requisite endorsements. (*See* ECF No. 12 at 6.) Based on these undisputed facts, Citizens is liable for conversion under Ind. Code § 26-1-3.1-420. However, rather than dispute the core facts of Quality's claim, Citizens presents the following four arguments in its response to Quality's Motion and in support of its own Motion: (1) Quality's claim is barred by laches; (2) a question of fact exists regarding whether the check was "delivered" to Quality; (3) Citizens is not strictly liable for the value of the check; and (4) Quality is not entitled to summary judgment because it failed to mitigate its damages. The Court addresses these arguments in turn.

## A. Laches

Citizens asserts that Quality's claim is barred by the doctrine of laches. (ECF No. 34 at 2.) As an initial matter, Citizens and Quality spend considerable time arguing whether laches is an available defense in an action at law. The Court need not resolve this dispute because even if laches is available[2], Citizens has failed to designate sufficient evidence in support of the defense; thus, the defense fails as a matter of law.

Laches is an affirmative defense, *Huff v. Huff*, 892 N.E.2d 1241, 1249 (Ind. Ct. App. 2008), and the burden of establishing the existence of affirmative defenses is on the defendant, *Celina Mut. Ins. Co. v. Forister*, 438 N.E.2d 1007, 1009 (Ind. Ct. App.

---

[2] While not definitively stated, Indiana courts appear to be moving toward allowing a laches defense in actions at law. *See Richmond State Hosp. v. Brattain*, 961 N.E.2d 1010, 1012 (Ind. 2012) (citing to other jurisdictions including the Seventh Circuit in support of the premise that laches is "equally available in suits at law" and applying the defense in an action at law concerning government back pay).

5

1982). In Indiana, "[l]aches requires: '(1) inexcusable delay in asserting a known right; (2) an implied waiver arising from knowing acquiescence in existing conditions; and (3) a change in circumstances causing prejudice to the adverse party.'" *SMDfund, Inc. v. Fort-Wayne-Allen Cnty. Airport Auth.*, 831 N.E.2d 725, 729 (Ind. 2005) (quoting *Shafer v. Lambie*, 667 N.E.2d 226, 231 (Ind. Ct. App. 1996)).

> "Prejudice may be created if a party, with knowledge of the relevant facts, permits the passing of time to work a change of circumstances by the other party." *Gleeson v. Preferred Sourcing, LLC*, 883 N.E.2d 164, 180 (Ind. Ct. App. 2008). "Mere inconvenience is insufficient to establish prejudice." *Ind. Real Estate Comm'n v. Ackman*, 766 N.E.2d 1269, 1274 (Ind. Ct. App. 2002). The party claiming laches must demonstrate that it "altered [its] position in a detrimental manner." *Id.*

*Carpenter v. Carpenter*, 891 N.E.2d 587, 598–99 (Ind. Ct. App. 2008). Simply put, "[a] mere lapse of time is not sufficient to establish laches; it is also necessary to show an unreasonable delay *that causes prejudice or injury*." *Angel v. Powelson*, 977 N.E.2d 434, 445 (Ind. Ct. App. 2012) (emphasis added). "The issue of laches is viewed as a question of fact to be resolved by the trial court in the exercise of its sound discretion from the facts and circumstances of each case." *Ebersol v. Mishler*, 775 N.E.2d 373, 378 (Ind. Ct. App. 2002).

Citizens has designated no evidence that establishes any of the elements of the laches defense; accordingly, Quality is entitled to judgment as a matter of law on the issue.

As to the first element, Citizens fails to identify an "*inexcusable* delay" by Quality. Citizens' entire argument rests on the assertion that, rather than contacting Citizens about the check immediately upon learning of its deposit, "Quality sat on its hands and did nothing for three years before filing suit against Citizens." (ECF No. 34 at

4.) But the undisputed evidence shows that Quality initially attempted to seek collection from Forde Trucking, and its guarantor, Calvert Forde, to no avail. (ECF No. 30-1 at 6.) It is true that it then took Quality almost three years to file suit and notify Citizens of its claim, but the Court fails to see where this delay was "inexcusable." The facts on this delay are sparse; after all, Quality may have been negotiating with Forde Trucking, hopeful that an amicable resolution was possible, before choosing to file a lawsuit against Citizens. In any case, even if the Court accepts this three-year delay as "inexcusable," Citizens' laches defense still fails because it wholly ignores the law surrounding the two remaining required elements.

Citizens does not discuss the second element of laches at all, instead stating in conclusory fashion that the element goes "hand-in-hand" with inexcusable delay. (ECF No. 40 at 6.) Yet, nowhere in its briefs does Citizens point to any evidence suggesting an implied waiver by Quality or an acquiescence to the alleged wrong committed by Citizens. *See Metro. Dev. Comm'n of Marion Cnty. v. Schroeder*, 727 N.E.2d 742, 749 (Ind. Ct. App. 2000) ("[A]cquiescence in an alleged wrong . . . is an essential element of laches."). To the contrary, from the time it learned of Forde Trucking's depositing of the check, Quality persistently contacted Forde Trucking and Great Lakes seeking the debts it was owed. (ECF No. 30-1 at 6.) Any indication in the record that Quality implicitly waived its rights in the check and acquiesced to the existing conditions is missing.

Even if Quality's conduct was an "implied waiver," most fatal of all to Citizens' laches defense is the lack of any evidence of prejudice to Citizens as a result of the

7

"delay," as required by the third element. Citizens largely repeats the same arguments it used in discussing "inexcusable delay." Namely, Citizens argues it was prejudiced by the three-year delay in learning of Quality's claim because it "could have immediately looked into Quality's concerns about the Check in June 2019, after Quality learned that Forde Trucking had deposited the Check allegedly without its endorsement or permission." (ECF No. 34 at 5.) Citizens also adds that the unreasonable delay "clearly prejudiced its ability to recoup the funds from the depository bank" but does not designate any evidence at all that explains what this purported "prejudice" entails. (ECF No. 40 at 7.) Nothing in these arguments supports the third element of laches. Citizens has not pointed to any "change in circumstances" between June 2019 and February 2022 that caused it prejudice via the purported delay such that it could not have likewise "looked into" the claim in 2022, nor has Citizens shown that it altered its position in a detrimental manner based on an assumption that Quality would not pursue its claim. *See Ind. Real Estate Comm'n v. Ackman*, 766 N.E.2d 1269, 1274 (Ind. Ct. App. 2002). If Citizens is implying that it could have retrieved the funds from the depository bank in June 2019 (but not in February 2022) through, for example, some established banking procedure available at that time, then at this summary judgment stage, it needed to designate evidence in the record in support of this argument; it did not. And the underlying facts of this case, undisputed by both sides, are clear-cut. The fact that Citizens was unable to "immediately" look into Quality's concerns has no bearing on Citizens'

8

liability.³ As outlined above, mere inconvenience does not suffice to show prejudice, *Ind. Real Estate Comm'n* 766 N.E.2d at 1274, and a mere lapse in time is not enough either; the key is showing *prejudice or injury caused by the plaintiff's delay*, *Angel*, 977 N.E.2d at 445. For instance, Citizens could have pointed to evidence revealing a serious change in its financial circumstances between 2019 and 2022 that puts it in a more compromising position of liability. Or perhaps, it could have shown that certain key employees/witnesses that were available in 2019 are no longer available now. But no such showing was made.

Citizens' lone cited case in support, *SMDfund, Inc. v. Fort-Wayne-Allen County Airport Authority*, 831 N.E.2d 725, (Ind. 2005), only further illustrates the deficiency of Citizens' laches defense. In that case, the plaintiff brought a declaratory action seeking to invalidate a statute as unconstitutional *seventeen years* after the statute was enacted, *id.* at 729, a significant time difference compared to the three-year delay here. More importantly, the Indiana Supreme Court noted that the delay on its own was not enough. *Id.* at 731 ("Seventeen years is surely an unreasonable delay, but laches does not turn on time alone. . . . The [defendant] has established that it would be prejudiced if this suit were allowed to proceed."). Specifically, the evidence showed

---

³ Accepting Citizens' "immediacy" argument as prejudice by itself would render the purpose of statutes of limitations obsolete. While it is true that laches can still apply to claims brought within a limitations period, as is the case here, the defense only arises in those contexts "if the laches are of such character as to work an equitable estoppel (*which contains the additional element of reliance by the defendant*)." *Chmiel v. US Bank Nat'l Ass'n*, 109 N.E.3d 398, 410 (Ind. Ct. App. 2018) (emphasis added). Simply not being able to respond to a claim "immediately" is not prejudice sufficient for laches; otherwise, all claims that are brought in the latter half of a limitations period, as was the case here, but which could have been brought earlier, would invoke the defense due to this supposed prejudice. More is needed.

that, during the seventeen-year delay and in reliance on the statute, the defendant had (1) incurred debt exceeding $44,000,000 due to activities related to the statute, (2) entered into a variety of leases, contracts, and other obligations, some of which extended for sixty to eighty years into the future, (3) issued bonds, and (4) took over operations of various airfields. *Id.* These facts are readily distinguishable from the case here, where Citizens has identified no injury resulting from delay at all and has not shown how it would be prejudiced if the suit were allowed to proceed.

Finally, Citizens argues that even if the Court denies its Motion for Summary Judgment, Quality's Motion should likewise be denied because underlying issues of fact remain. (ECF No. 34 at 6.) It is true that laches is often not an issue that is appropriate for resolution at the summary judgment stage; however, that is only the case when there are actual *genuine disputes of fact* that preclude summary judgment. *See, e.g., Chmiel v. US Bank Nat'l Ass'n*, 109 N.E.3d 398, 410–11 (Ind. Ct. App. 2018) (reversing trial court's finding of laches on summary judgment because the plaintiff had *designated evidence* raising genuine disputes of fact as to whether the delay was inexcusable); *Nat'l Found. For Special Needs Integrity, Inc. v. Reese*, No. 1:15-cv-00545-TWP-DKL, 2016 WL 6277617, at *9 (S.D. Ind. Oct. 26, 2016) (acknowledging that summary judgment is not typically proper as to laches unless there is no genuine dispute of fact, and denying the plaintiff's summary judgment motion on the issue because the defendant *had pointed to evidence* suggesting that the funds the plaintiff was seeking had been transferred for other purposes during the plaintiff's delay). Granting summary judgment in favor of Quality on the issue of laches is proper here

where Citizens has designated no evidence pertinent to the defense, thus disqualifying any argument that there remains a "genuine dispute of material fact."

For the aforementioned reasons, Citizens has failed to show that it is entitled to a laches defense.

### B. Delivery of the Check

Citizens next argues that a question of fact remains as to whether the check was delivered to Quality, which precludes summary judgment. (ECF No. 34 at 9–10.)

"An action for conversion of an instrument may *not* be brought by . . . a payee or endorsee who did not receive delivery of the instrument either directly *or through delivery to . . . a co-payee*." Ind. Code § 26-1-3.1-420(a)(2) (emphasis added).

Despite Citizens' assertion to the contrary, (*see* ECF No. 34 at 9), there is no question of fact here. The parties do not dispute that the check was delivered to Forde Trucking, a co-payee of the instrument. (*See* ECF No. 36 at 4 (acknowledging Forde Trucking's depositing of the check).)

Rather, the only purported "dispute" here is one of law. Citizens argues that there are "no reported Indiana decisions interpreting Section 26-1-3.1-420(a)(2)" and that, therefore, "it is an open question whether, under Indiana law, the delivery of the Check to Forde Trucking would constitute delivery of the Check to [Quality]." (ECF No. 34 at 10.) Citizens did not develop this argument any further. In any case, the Court is capable of interpreting, if need be, the relevant provision by applying Indiana's principles of statutory construction. *See Brownsburg Area Patrons Affecting Change v. Baldwin*, 137 F.3d 503, 507 (7th Cir. 1998) ("Federal courts must

11

interpret a state statute as that state's courts would construe it."). Under Indiana law, "[t]he first step in interpreting a statute is to determine whether the Legislature has spoken clearly and unambiguously on the point in question. . . . When a statute is clear and unambiguous, [the court] need not apply any rules of construction other than to require that words and phrases be taken in their plain, ordinary, and usual sense. . . . Clear and unambiguous statutes leave no room for judicial construction." *City of Carmel v. Steele*, 865 N.E.2d 612, 618 (Ind. 2007) (citations omitted). The language in Ind. Code § 26-1-3.1-420(a)(2) is unambiguous: an action for conversion of an instrument may not be brought by a plaintiff-payee who does not receive delivery of the instrument, but delivery to the plaintiff-payee is accomplished via delivery to its *co-payee*. Citizens makes no argument proffering a different interpretation of the statute, nor can it. The official comments of Uniform Commercial Code § 3-420, the language of which is identical to Indiana's § 26-1-3.1-420, only further supports the unambiguous terms of the statute. *See* U.C.C. § 3-420 cmt. 1 ("If a check is payable to more than one payee, delivery to one of the payees is deemed to be delivery to all of the payees.").

The check in this case was indisputably delivered to Quality's co-payee, Forde Trucking. Thus, under the clear language of § 26-1-3.1-420, the check was effectively delivered to Quality. Quality is therefore not prohibited from bringing this action for conversion of an instrument.

### C. Damages

Citizens' final two arguments are both pertinent to damages and will be discussed together. First, Citizens argues that it is not strictly liable for the full amount of the check because of laches, and second, even if it is, summary judgment is not appropriate because Quality failed to mitigate its damages. Both of these arguments are unavailing.

1. Liability

In actions for the conversion of an instrument such as this one, "the measure of liability *is presumed to be the amount payable on the instrument*." Ind. Code § 26-1-3.1-420(b) (emphasis added); *see also Ambassador Fin. Servs., Inc. v. Ind. Nat'l Bank*, 605 N.E.2d 746, 751 (Ind. 1992) ("A drawee bank which pays a check over the forged endorsement of a payee is strictly liable to the drawer for the amount of the improper payment.").

Citizens does not contest that, generally, the appropriate amount of damages in an action for the conversion of an instrument is the face value of the instrument itself, and it likewise does not contest that it, as the payor bank, would be strictly liable for said damages. (ECF No. 34 at 10.) Rather, Citizens simply reiterates its previous central argument, stating that "it cannot be held liable under Section 420 based on the doctrine of laches." (*Id.*) For the reasons already discussed above, this argument fails.

2. <u>Mitigation of Damages</u>

Citizens next argues that summary judgment is inappropriate because Quality failed to mitigate its damages. (*Id.* at 6.) However, Citizens fails to cite any law suggesting that Quality has an *affirmative* duty to mitigate its damages in a conversion action, and the Court has found no law supporting such a proposition either. Instead, Citizens conflates this purported affirmative duty to mitigate with its *own* ability to mitigate the damages it owes. These concepts are distinct, and the difference between them is dispositive here.

A duty to mitigate damages most often arises in negligence or contract actions. *See, e.g., Willis v. Westerfield*, 839 N.E.2d 1179, 1187 (Ind. 2006) ("Put simply, a plaintiff in a negligence action has a duty to mitigate his or her post-injury damages, and the amount of damages a plaintiff is entitled to recover is reduced by those damages which reasonable care would have prevented."); *Sheppard v. Stanich*, 749 N.E.2d 609, 612 (Ind. Ct. App. 2001) (discussing the duty to mitigate in contracts). A defendant asserting the defense has the burden to show that the plaintiff did not exercise reasonable care in mitigating the damage, and that therefore, the damages must be reduced accordingly. *Willis*, 839 N.E.2d at 1179.

On the other hand, a general mitigation of damages defense in the conversion context does *not* burden a plaintiff with a *duty* to mitigate its damages. Rather, the defense simply reduces the amount of damages to which a plaintiff may be entitled if, logically, the damage that a plaintiff suffered was lessened by some mitigatory acts of the defendant. This doctrine is well-established in Indiana with respect to

14

conversion claims. *See Nance v. Miami Sand & Gravel, LLC*, 825 N.E.2d 826, 836 (Ind. Ct. App. 2005) (citation omitted) ("We observe that with respect to a conversion claim, damages are restricted to actual losses sustained as a proximate result of the conversion and damages are mitigated by return of the property to the owner.").

The lone case cited by Citizens in support of its argument only further validates the conclusion that a *duty* to mitigate does not arise in conversion actions under Indiana law. In that case, *Yeager & Sullivan, Inc. v. Farmers Bank*, the court did not, as Citizens mistakenly suggests, impose an affirmative duty to mitigate damages on a plaintiff alleging conversion of an instrument; rather, the court simply recognized a "general defense in mitigation of damages," consistent with the defense available in all conversion actions discussed above. 317 N.E.2d 792, 797 (Ind. Ct. App. 1974). The court in *Yeager* was trying to determine whether a defendant bank that converted an instrument, but then subsequently applied the proceeds from the instrument to a plaintiff's joint venture, could accordingly mitigate its damages owed to the plaintiff. The court held that a defendant who seeks to mitigate damages in this way must "establish that the converted proceeds were applied *to the specific debt the proceeds were intended to discharge*." *Id.* at 799 (emphasis added). Stated differently, if a defendant bank is accused of converting a check, the bank can mitigate its damages by showing that the proceeds from the check (or a portion thereof) were used for the plaintiff's benefit, *in the way that plaintiff had intended the proceeds to be used*. *See id.* at 799–800. This conclusion is consistent with the general mitigation defense available in all conversion cases; by applying the proceeds

15

from a check to a plaintiff's intended purpose for those proceeds, the "damages are mitigated by return of the property to the owner." *Nance* 825 N.E.2d at 836; *see also Yeager*, 317 N.E.2d at 799 ("It would seem, therefore, that to allow a tortfeasor-converter to mitigate damages by showing an application of the converted property to the benefit of the injured party would have, unless the application was to the specific use the converted property was to be put, the effect of allowing the tortfeasor to dictate to the true owner how his property is to be used. Such an effect would undermine the 'essence' of conversion.").

Given the facts, there is no dispute that Quality never received the proceeds of the check in any form. Citizens even admits that Forde Trucking "retained the proceeds of the Check and did not remit them to Quality." (ECF No. 34 at 7 n.2.) As discussed above, Quality had no affirmative duty to mitigate its damages after the check was converted.[4] And Citizens has pointed to no evidence, nor could it, suggesting that the proceeds from the check were applied in any way to the benefit of Quality. Thus, unlike the bank in *Yeager*, Citizens has no ability to mitigate the damages it owes. Citizens' mitigation argument fails.

Because the face value of the check is indisputably $45,392.75, (ECF No. 30-1 at 33), and because the measure of liability is presumed to be the amount payable on the instrument, Ind. Code § 26-1-3.1-420(b), Citizens, as the payor bank by its own admission, is liable to Quality in the amount of $45,392.75. *See Hanover Ins. Co. v.*

---

[4] And the Court is unsure how Quality could even attempt to "mitigate" damages from a converted check aside from reaching out to Forde Trucking (which it did) to try to retrieve the proceeds owed to Quality. The damage from a converted check occurs in one lump sum the moment the check is converted. There is no continuing damage to mitigate after the fact.

16

*N. Bldg. Co.*, 751 F.3d 788, 795 (7th Cir. 2014) ("If all the material issues of fact underlying a claim, including the amount of damages, are established and on the basis of applicable substantive law the claimant is entitled to judgment, a summary judgment including the award of damages may be appropriately rendered.").

### IV.   Conclusion

For the aforementioned reasons, Quality Leasing Co.'s Motion for Partial Summary Judgment, (ECF No. 29), is **granted**.  Citizens Bank's Motion for Summary Judgment, (ECF No. 35), which the Court treated as a cross-motion for summary judgment as to Count V of the Complaint, (ECF No. 1-1), is **denied**.  Based on the undisputed facts of the case, and because all of Citizens' defenses fail as a matter of law, Citizens Bank is adjudged liable to Quality Leasing Co. for conversion of an instrument under Ind. Code § 26-1-3.1-420, alleged in Count V of the Complaint, (ECF No. 1-1), in the amount of **$45,392.75**.  Other parties and claims remain in this case; thus, final judgment will enter at a later time.

**SO ORDERED**.

Date: 03/16/2023

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution to registered counsel of record by CM/ECF.